# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee/Cross Appellant,

v

DEON JEFFERSON JOHNSON,

        Defendant-Appellant/Cross
        Appellee.

UNPUBLISHED
October 22, 2015

No. 322179
Genesee Circuit Court
LC No. 13-033536-FC

Before: FORT HOOD, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(f), and two counts of resisting or obstructing a police officer, MCL 750.81d(1). The prosecution challenges defendant's sentence on cross-appeal. We affirm defendant's convictions, but remand for resentencing consistent with this opinion.

Defendant was convicted of sexually assaulting his friend's 61-year-old mother, whom he called "Mom," in his kitchen. His DNA was recovered during a forensic examination of the victim. When confronted by investigating police officers, defendant ran and then refused to comply with orders to put his arms behind his back after he was captured. While in custody, defendant denied taking the victim to his house and denied ever having sex with her. At trial, defendant testified that sexual intercourse was consensual.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that he received ineffective assistance of counsel because his attorney failed to seek suppression of defendant's alleged statement to police made after his arrest and failed to present the testimony of certain witnesses which would have provided a substantial defense. We disagree. Our review is limited to errors apparent on the record because a *Ginther*[1] hearing was not held. See *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003).

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

-1-

To succeed on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's error, the result would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (internal quotation marks and citation omitted).

Defendant claims that the alleged statement he made to police after his arrest was made without the benefit of *Miranda*[2] warnings and his attorney should have timely sought its suppression. Although the officer involved testified that he advised defendant of his rights and defendant signed a form waiving his *Miranda* rights, defendant asserts that it was not his signature on the form. It appears from the record that defense counsel moved for the appointment of a handwriting expert to review the signature on the rights form, but the motion was denied as untimely because it was made on the first day of trial. It also appears that this issue was not pursued sooner because defendant only advised his counsel that he did not sign the form about a week before trial. That is, defense counsel informed the trial court on the record that defendant's claim was brought to his attention in the previous week. Under these circumstances, defendant has not shown that his counsel was ineffective for failing to timely seek suppression of his statement to police.

Defendant also argues that he was denied a substantial defense because his counsel failed to call one witness at trial and failed to elicit certain testimony from two other witnesses who testified at trial. In particular, defendant claims that his 18-year-old daughter should have been called and would have testified that she saw the victim with defendant at his house on the day of the alleged crime and the victim did not indicate that she was raped or appear to be in distress. Further, defendant claims that his brother, who did testify at trial, recently remembered seeing the victim with defendant at defendant's house on the day of the alleged crime and she did not indicate that she was raped and did not appear to be in distress. And defendant claims that his mother, who also testified at trial, would add to her testimony that, when she saw the victim and defendant at her house on the day of the alleged crime, the victim referenced drug use and did not indicate that she was raped or appear to be in distress.

A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses. *People v Hubbard*, 156 Mich App 712, 714; 402 NW2d 79 (1986). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002) (citations omitted). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (citation omitted). That is, if a defendant was able to assert his offered theory of defense at trial, even if a particular witness was not called to testify in support

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

of that theory because of counsel's action, the defendant cannot be deprived of a substantial defense. *Id*.

Here, defendant has failed to rebut the presumption that his counsel chose not to call defendant's daughter as a witness as a matter of trial strategy. See *Davis*, 250 Mich App at 368. And he has not established that the failure to call her deprived him of a substantial defense. See *Dixon*, 263 Mich App at 398. Further, that defendant's brother and mother suddenly and belatedly "remembered" certain information after defendant's trial was completed does not tend to establish that defense counsel's performance fell below an objective standard or reasonableness. See *Trakhtenberg*, 493 Mich at 51. Accordingly, defendant's ineffective assistance of counsel claim is without merit.

## II. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that the evidence was insufficient to sustain his two convictions of resisting or obstructing a police officer. We disagree. We review de novo challenges to the sufficiency of the evidence, considering the evidence in a light most favorable to the prosecution to determine "whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010).

Due process requires that the prosecution in a criminal case introduce evidence sufficient to justify a trier of fact in concluding that the defendant is guilty beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999) (citations omitted). "The question is whether the evidence presented at trial, together with all reasonable inferences arising therefrom, was sufficient to allow a rational trier of fact to find each element of the crime proven beyond a reasonable doubt." *People v DeLisle*, 202 Mich App 658, 660; 509 NW2d 885 (1993). In reviewing the sufficiency of the evidence, this Court must not interfere with the role of the trier of fact in determining " 'the weight of the evidence or the credibility of witnesses.' " *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012), quoting *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Furthermore, "[i]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). " 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999), quoting *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993).

Defendant was charged with two counts of resisting or obstructing a police officer. The first count involved defendant running from police and the second count involved defendant's failure to comply with orders to put his hands behind his back once he was on the ground. To establish the offense of resisting or obstructing a police officer pursuant to MCL 750.81d(1), the prosecutor must demonstrate " '(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties.' " *People v Quinn*,

305 Mich App 484, 491; 853 NW2d 383 (2014), quoting *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010). Only the first element is at issue.

Deputy Mohamad Sanchez testified that he approached defendant, "identified [himself] as a sheriff deputy," and "instructed him to get on the ground." He testified that defendant then began to run away and jumped over a fence. Prearrest flight that actively interferes with an investigation is sufficient to sustain a conviction for resisting or obstructing a police officer. *People v Pohl*, 207 Mich App 332, 333; 523 NW2d 634 (1994).

Deputy Sanchez also testified that, once defendant was on the ground, his left arm was under his body. According to Deputy William Brandon, both of defendant's hands were under his body. Deputy Sanchez testified that he ordered defendant to put his hands behind his back, but defendant failed to comply. Deputy Brandon testified that he and Sanchez eventually had to wrest defendant's arms from under his body. Although it is unclear how long it took, the officers' testimony evidences a struggle to get defendant to comply with orders to put his hand or hands behind his back so that he could be secured. Accordingly, defendant's convictions of two counts of resisting or obstructing a police officer were supported by sufficient evidence and defendant's challenge is without merit.

## III. SENTENCING GUIDELINES

Next, defendant argues that offense variables (OVs) 3, 10, and 13 were improperly scored. We disagree.

"The proper interpretation and application of the sentencing guidelines is a question of law that this Court reviews de novo." *People v Portellos*, 298 Mich App 431, 446; 827 NW2d 725 (2012). "[T]he circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

### A. OV 3

Defendant argues that the victim did not suffer bodily injury that required medical treatment as required under MCL 777.33(1)(d). And even if she suffered bodily injury, there was no evidence of medical treatment; thus, at most OV 3 could have been scored at five points. However, because bodily injury is an element of CSC 1, and MCL 777.33(2)(d) prohibits the scoring of five points if bodily injury is an element of the sentencing offense, OV 3 should have been assessed at zero points. We disagree.

OV 3 concerns physical injury to a victim. MCL 777.33(1). Ten points must be assessed if "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). " '[R]equiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3). Where "[b]odily injury not requiring medical treatment occurred to a victim," five points must be assessed. MCL 777.33(1)(e). However, five points cannot be assessed "if bodily injury is an element of the sentencing offense." MCL 777.33(2)(d). " '[B]odily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011).

In this case, defendant was properly assessed 10 points under OV 3. The victim, a 61-year old woman, testified that she was violently raped, suffered excruciating pain, and was bleeding profusely from her vaginal area. She testified that her "pants were full of blood." As a consequence, she sought emergency medical treatment from a hospital. A forensic examination was performed and determined that the victim suffered 1.5 centimeter tears on both the left and right inside walls of her vaginal canal, which were still oozing several hours after the forcible penetration. The emergency room doctor testified that the tears were "definite signs of trauma. Of blunt trauma to the vaginal area." He further testified that the vaginal tears would cause blood loss and "would be very painful." Thus, he testified, the victim may have been given medications for pain and was also prescribed medications to prevent sexually transmitted diseases. It is clear from this evidence that the victim suffered bodily injury requiring medical treatment as a consequence of the sexual assault. The fact that surgery or sutures were not required to stop the victim's vaginal bleeding does not lead to the conclusion that medical treatment was not required or provided. Accordingly, defendant's challenge to the assessment of 10 points for OV 3 is without merit.

## B. OV 10

Next, defendant argues that OV 10 was improperly scored at 10 points because he did not exploit any particular vulnerability of the victim. We disagree.

OV 10 concerns exploitation of a vulnerable victim. MCL 777.40(1). Points should be assessed under this OV "only when it is readily apparent that a victim was 'vulnerable,' i.e., was susceptible to injury, physical restraint, persuasion, or temptation." *People v Cannon*, 481 Mich 152, 158; 749 NW2d 257 (2008), citing MCL 777.40(3)(c). Ten points must be assessed if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). Five points must be assessed if "[t]he offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious." MCL 777.40(1)(c).

However, even if we agreed with defendant that ten points should not have been assessed for OV 10, defendant concedes that the assessment of five points was justified because of the difference in his size or strength. Thus, defendant's offense variable score would be 60 rather than 65, which is still OV level IV. MCL 777.62. Accordingly, defendant's minimum sentence range would not change and resentencing would not be required.

## C. OV 13

Defendant also argues that OV 13 was improperly scored at 25 points because OV 12 should have been scored, not OV 13. We disagree.

At sentencing, the prosecution successfully argued that OV 13 should be scored at 25 points because defendant committed three crimes against a person in this case. That is, defendant was convicted of CSC 1 and two counts of resisting or obstructing a police officer—both of which are crimes against a person. MCL 777.16d; 777.16y. OV 13 concerns a continuing pattern of criminal behavior. MCL 777.43(1). This variable is to be scored at 25

points if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). OV 12, on the other hand, concerns contemporaneous felonious criminal acts, MCL 777.42(1), which does not include the sentencing offense. *People v Light*, 290 Mich App 717, 722-723; 803 NW2d 720 (2010). A criminal act is considered "contemporaneous" for purposes of OV 12 only if it "has not and will not result in a separate conviction." MCL 777.42(2)(a)(*ii*). In this case, because defendant's two acts of resisting or obstructing a police officer resulted in separate convictions, they could not be assessed under OV 12. Consequently, the assessment of 25 points under OV 13 was proper.

In summary, defendant is not entitled to resentencing because of a scoring error.

## E. RESISTING AND OBSTRUCTING CONVICTIONS

Defendant also argues that irrespective of any errors in the assessment of the OVs, the trial court departed upward from the sentencing guidelines on his resisting and obstructing convictions. His minimum guideline range for both convictions was 5 to 46 months. But the trial court sentenced him to a minimum of 72 months' imprisonment. The trial court did not state any reasons for departure. We vacate defendant's sentences for the two resisting and obstructing convictions because the trial court did not explain its reasoning for exceeding the guidelines and remand for resentencing on these two convictions.

## IV. CROSS-APPEAL

The prosecution argues on cross-appeal that, pursuant to MCL 769.12(1)(a), defendant should have been sentenced to a mandatory minimum of 25 years' imprisonment for his CSC 1 conviction because he had previously been convicted of three felonies. We agree.

MCL 769.12 provides:

> (1) If a person has been convicted of any combination of 3 or more felonies . . . and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under [MCL 769.13] as follows:

> (a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years. Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only.

CSC I is defined as a "serious crime" under the statute. MCL 769.12(6)(c). Further, as defendant concedes, he has at least one prior conviction for a "listed offense." MCL 769.12(6)(a). Therefore, he should have been sentenced to a minimum of 25 years' imprisonment.

However, defendant contends that he did not receive adequate notice of the 25-year mandatory minimum. MCL 769.13 provides for notice:

-6-

(1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under [MCL 769.10, MCL 769.11, or MCL 769.12], by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

(2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

In this case, the prosecutor filed a notice of intent to seek an enhanced sentence on the same day the information was filed. The notice states in pertinent part as follows:

For sentence computation as an habitual offender which enhances the maximum sentence, defendant is deemed to be **fourth offender** under MCL 769.12, the maximum sentence would be life if primary offense has penalty of 5 years or more; 15 years or less if primary offense has penalty under 5 years.

Defendant argues that because the notice does not specifically say that he would be subject to a 25-year mandatory minimum sentence if convicted, the notice was deficient. However, MCL 769.13(2) only states that such a notice must provide "the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement." It does not state that a mandatory minimum must be included.

Defendant also calls attention to MCR 6.112(D), which provides that an "information must set forth the substance of the accusation against the defendant and the name, statutory citation, and *penalty* of the offense allegedly committed." (Emphasis added.) In this case, the information stated that CSC I was punishable by "Life or any term of years." This Court has held that an information complies with the court rule by including only the maximum penalty. *People v St John*, 230 Mich App 644, 648; 585 NW2d 849 (1998).

Further, defendant fails to develop his due process argument. " 'It is not enough for an appellant in his brief simply to . . . assert an error and then leave it up to this Court to . . . unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.' " *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) (alterations in *Mettler Walloon, LLC*).

And defendant's reliance on *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), is unavailing. *Alleyne* holds that under the Sixth Amendment, "[a]ny fact that,

by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Id.* at 2155. Defendant argues that a mandatory minimum sentence of 25 years would violate the rule from *Alleyne* because the jury did not find beyond a reasonable doubt that he had the predicate convictions. However, as defendant recognizes, the Court in *Alleyne* noted that it had previously held that "the fact of a prior conviction" was an exception to the general rule that every fact must be found by a jury, *Almendarez-Torres v United States*, 523 US 224; 118 S Ct 1219; 140 L Ed 2d 350 (1998), and declined to address whether its decision affected that holding because the parties had not disputed the "vitality" of that decision. *Alleyne*, 133 S Ct at 2160 n 1. Our Supreme Court has recently found the rule from *Almendarez-Torrez* continues to be good law. *People v Lockridge*, ___ Mich ____; ___ NW2d ___ (2015) (Docket No. 149073); slip op at 8 n 12.

In summary, the trial court plainly erred in failing to sentence defendant to a mandatory minimum of 25 years in prison. We vacate defendant's sentence for the CSC 1 conviction and remand for resentencing in accordance with MCL 769.12(1)(a).

## V. STANDARD 4 BRIEF

Defendant next raises three issues in a Standard 4 brief. We address each in turn.

## A. EXPERT WITNESS TESTIMONY

Defendant argues that he was denied a fair trial when the nurse who examined the victim at the hospital was allowed to present expert testimony even though she was not qualified as an expert witness. We disagree.

Although defendant generally objected to the nurse being qualified as an expert witness, he did not object to any portion of the nurse's testimony on the ground that it constituted expert testimony by a witness who had not been qualified as an expert. Therefore, this issue is unpreserved. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). We review for plain error unpreserved claims of evidentiary error. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

MRE 701, the rule regarding opinion testimony by lay witnesses, provides as follows:
> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Additionally, lay opinion testimony cannot be based on specialized knowledge or experience that a layperson would not possess. *People v Petri*, 279 Mich App 407, 416; 760 NW2d 882 (2008); *People v McLaughlin*, 258 Mich App 635, 657-658; 672 NW2d 860 (2003). Also relevant is MRE 702, the rule regarding expert testimony, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based

-8-

upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In this case, the nurse generally recounted her experience and training as a sexual assault nurse examiner and testified regarding the examination of the victim in this case. At the conclusion of the prosecutor's direct examination, the nurse was asked whether the injuries to the victim's genitals were "in any way inconsistent with what [the victim] had reported to" her and the nurse answered, "No." On redirect examination, the nurse also testified that vaginal tearing was uncommon in sexual assault cases.

Most of the nurse's testimony was properly admissible under MRE 701. See *McLaughlin*, 258 Mich App at 645 n 3, 657-658. Under *McLaughlin*, the nurse's observations of the victim's physical and emotional state and her narrative of her examination did not require resort to specialized knowledge.

However, parts of the nurse's testimony veered into expert opinion and were clearly not within the scope of MRE 701. In *McLaughlin*, the nurse opined that the victim's lack of vaginal injuries was not unusual for a woman who had delivered two children. *Id*. at 645 n 3. The Court found that this testimony "might be construed as specialized information not commonly known." *Id*. at 658. Nonetheless, the Court concluded that any error in that case was harmless. In the present case, the nurse's testimony that the victim's vaginal injuries were not inconsistent with her allegation of sexual assault and that vaginal tearing was uncommon in sexual assault cases was based on her specialized knowledge and training; such knowledge is not possessed by the average layperson. Therefore, that testimony was not admissible under MRE 701.

But defendant has not shown that any error affected his substantial rights, or, stated differently, that it was outcome determinative. See *Vaughn*, 491 Mich at 665-666. The nurse's opinions regarding the cause of the victim's injuries and the commonality of vaginal tearing were largely duplicative of expert testimony from the doctor who examined the victim, who also testified that vaginal tearing is uncommon in sexual assault cases and that it is indicative of nonconsensual sex. Further, the evidence of defendant's guilt was convincing. In addition to the victim's testimony, the forensic investigation recovered DNA from the victim that matched defendant's DNA. Witnesses described the victim after the assault as "very shaken," "anxious," "very disheveled," and "distraught," which would indicate that she had suffered trauma. This evidence strongly suggested that the intercourse had been nonconsensual. Accordingly, defendant has not established that he is entitled to appellate relief.

## B. FALSE TESTIMONY

Defendant next argues that he was denied a fair trial because the prosecutor knowingly presented false testimony. We disagree. Because this issue was not raised below, our review is for plain error affecting substantial rights. See *Vaughn*, 491 Mich at 654.

"It is inconsistent with due process when the prosecution allows false testimony from a state's witness to stand uncorrected." *People v Smith*, ___ Mich ___, ___; ___ NW2d ___ (2015) (Docket No. 148305); slip op at 7. Prosecutors are prohibited from knowingly using false

testimony to obtain a conviction. *Id*. Further, prosecutors must correct false testimony. *Id*. In this case, defendant has not shown that any of the testimony at issue was false, let alone that the prosecutor knowingly introduced any such false testimony.

Defendant calls attention to what he characterizes as inconsistencies in the evidence. Defendant has undeniably identified discrepancies in the evidence. Such discrepancies are insufficient to establish that a prosecutor has knowingly presented false testimony. *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). Moreover, the prosecutor did not try to conceal the inconsistencies. *Id*.

Defendant also argues that the prosecutor exaggerated the gruesomeness of the sexual assault by unfairly emphasizing blood evidence to suggest that the victim had bled heavily. After reviewing the record it is clear that he prosecutor simply presented the evidence regarding fluids and blood without sensationalizing it.

Defendant also argues that the prosecutor mischaracterized the injuries to the victim's vaginal canal. Defendant draws attention to the preliminary examination testimony of the nurse who examined the victim. The nurse described the injuries to the victim's vaginal canal as a "scrape" rather than a "cut." The nurse and a doctor who had examined the victim denied that blood was coming out of the victim's vagina when they examined her. Defendant takes issue with the prosecutor's questions at trial in which she called the injuries "tears." He adds that the doctor denied that the injuries would have caused significant blood loss. Contrary to defendant's argument, the prosecutor did not mischaracterize the injuries to the victim's vaginal canal. Although the nurse referred to them as scrapes during the preliminary examination, she also referred to them as lacerations and agreed with the prosecutor's characterization of them as abrasions. And at trial, it was the nurse, not the prosecutor, who first referred to the injuries as tears. Accordingly, defendant's claim that he was denied a fair trial because the prosecutor knowingly presented false testimony is wholly without merit.

## C. SENTENCING GUIDELINES

Defendant next raises several issues involving the sentencing guidelines. The only issue that was properly raised below concerns prior record variable (PRV) 2. The remainder of defendant's issues were not raised at sentencing, in a proper motion for resentencing, or in a proper motion to remand. Unpreserved sentencing errors that result in a sentence outside the appropriate guidelines range are reviewed for plain error. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004).

### 1. PRV 2

PRV 2 concerns prior low severity felony convictions. MCL 777.52(1). Twenty points must be assessed for this variable if the defendant has three prior low severity felony convictions. MCL 777.52(1)(b). In this case, defendant was assessed 20 points for PRV 2, but he argues that he did not, in fact, have three low severity felony convictions. Specifically, he takes issue with proceedings regarding charges of possession with intent to deliver cocaine from 1998. Defendant is correct that if these charges were dismissed under MCL 333.7411(1), they should not have been considered in the assessment of PRV 2. MCL 777.50(4)(a); see also *People v*

-10-

*James*, 267 Mich App 675, 679-680; 705 NW2d 724 (2005).  But if a defendant whose sentence was deferred under MCL 333.7411 violates a term or condition of probation, "the court may enter an adjudication of guilt and proceed as otherwise provided."  MCL 333.7411(1).  Here, this issue was raised at sentencing.  The prosecution indicated that this matter was reviewed and defendant "plead under 7411 but that was revoked because he continually violated probation."  However, the "Notes" section of the PSIR refers to a "discharge" on "04/23/01."  Because the record is ambiguous, further articulation on whether PRV 2 was correctly scored is required on remand.

## 2.  PRV 3

Prior record variable 3 concerns "prior high severity juvenile adjudications."  MCL 777.53(1).  A "prior high severity juvenile adjudication" includes "[a] crime listed in offense class M2, A, B, C, or D."  MCL 777.53(2)(a).  Ten points must be assessed if the defendant has one prior high severity juvenile adjudication.  MCL 777.53(1)(c).

In this case, the PSIR shows that in 1994, defendant was charged with armed robbery, pleaded guilty to larceny from a person, was sentenced to "Formal Probation," and was discharged later that year.  Larceny from a person is a class D offense.  MCL 777.16r.  However, defendant contends that 10 points should not have been assessed for PRV 3 because he received a "deferred" sentence.  But the PSIR, which is presumed accurate, *People v Callon*, 256 Mich App 312, 334; 662 NW2d 501 (2003), makes no mention of a "deferred" sentence, and defendant does not provide any evidence supporting this contention.  Under these circumstances, defendant is not entitled to appellate relief.

## 3.  OV 4

OV 4 concerns "psychological injury to a victim."  MCL 777.34(1).  Ten points must be assessed if "[s]erious psychological injury requiring professional treatment occurred to a victim."  MCL 777.34(1)(a).  However, "the fact that treatment has not been sought is not conclusive."  MCL 777.34(2).

In this case, defendant contends that the trial court did not find that any psychological injuries suffered by the victim emanated from the sentencing offense.  He calls attention to evidence indicating that the victim had been taking Xanax and Vicodin for psychological issues before the alleged assault in this case.  The trial court did not specifically articulate its reasoning behind the assessment of OV 4, presumably because defendant did not object to it at sentencing.  Nonetheless, the PSIR indicates that the victim reported "to have suffered from anxiety attacks, afraid to trust anyone and cannot go for walks anymore as she is scared."  Further, the victim testified at trial that she was having nightmares every night following the assault and that she was afraid to walk outside by herself, which had not been the case before the assault.  Under these circumstances, the assessment of OV 4 was not plainly erroneous.

## 4.  OV 19

OV 19 concerns interference with the administration of justice.  MCL 777.49.  Pursuant to MCL 777.49(c), trial courts must assess 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice."

In this case, OV 19 was properly assessed at 10 points for defendant's CSC conviction given his convictions for resisting or obstructing a police officer. As stated, those convictions were premised on defendant's acts of running away from police and refusing to put his hands behind his back. This Court has held that "fleeing from police contrary to an order to freeze" constitutes interference or attempted interference with the administration of justice. *People v Hershey*, 303 Mich App 330, 344; 844 NW2d 127 (2013). Thus, defendant's convictions for resisting or obstructing, which arose out of defendant's conduct while police were investigating the sexual assault, made the assessment of OV 19 proper.

In summary, defendant's convictions are affirmed but this matter is remanded for (1) resentencing of the CSC 1 conviction in accordance with MCL 769.12(1)(a); (2) resentencing of the resisting and obstructing convictions; and (3) reconsideration of the scoring of PRV 2.

We affirm defendant's convictions, but remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

-12-