*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAKE DOUGLAS-ADAM RAUCH,

Defendant-Appellant.

UNPUBLISHED
December 19, 2019

No. 345330
Tuscola Circuit Court
LC No. 17-014234-FC

Before: BECKERING, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (sexual penetration accomplished by force or coercion and causing personal injury), and five counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(f) (sexual contact accomplished by force or coercion and causing personal injury). The jury acquitted defendant of seven additional counts of CSC-II. The trial court sentenced defendant to prison terms of 15 to 50 years for each CSC-I conviction and 10 to 15 years for each CSC-II conviction. The court ordered that defendant's sentence for one count of CSC-I was to be served consecutively to the sentences for the remaining convictions, which were to be served concurrently. For the reasons set forth in this opinion, we affirm defendant's convictions, but vacate his sentences and remand for resentencing.

## I. BACKGROUND

This appeal arises from the sexual assault of a female acquaintance of defendant's in Marlette, Michigan. The victim and defendant's niece were friends, and the victim had known defendant and his family for several years. The defense theory at trial was that defendant and the victim engaged in consensual sex.

The prosecution presented evidence that on June 23, 2017, after the victim had broken up with her boyfriend, defendant began sending the victim text messages, which became sexual in nature. The victim repeatedly informed defendant that she did not want to do anything sexual

-1-

with him and he stopped sending her text messages. The day after defendant stopped sending the victim text messages, the victim reinitiated a text-message exchange with defendant. That led to defendant again expressing his interest in wanting to have sex with the victim. The victim explained that she initiated this text-message exchange because she thought defendant was someone she could vent to; she denied that she was interested in having sex with defendant. According to the victim, she continued to refuse defendant's sexual advances, but she also did not think defendant was serious about wanting to have sex because defendant had a flirty demeanor with others and he had a girlfriend.

On June 24, the victim allowed defendant to pick her up in his truck. The victim testified that she just wanted to drive around town and talk. Instead, defendant drove out of town and then down a dirt road to a deserted field. According to the victim, as defendant was driving, he began touching her inner thigh and then began touching her vagina over her clothing. The victim testified that she became uncomfortable, repeatedly pushed defendant's hand away, and repeatedly told defendant to stop, but defendant continued to touch her. After defendant stopped in the field, he sexually assaulted her inside the truck. According to the victim, defendant forcibly removed her pants, inserted his fingers in her vagina, and put his penis in her vagina while wearing a condom. Afterward, defendant took the victim back to town and dropped her off. The victim was with friends at a party for a while, but later that night, the victim told her mother and others what had happened, and family members came and took the victim to a hospital where the victim underwent a sexual assault nurse examination (SANE).

A detective interviewed defendant the next day. Defendant was crying during the interview and told the detective that he had engaged in sexual intercourse with the victim and that the victim repeatedly told him "no" during the intercourse, but defendant denied that he raped the victim. At trial, defendant testified that he and the victim engaged in consensual sex, but then the victim seemed to be having second thoughts and told him to stop, so he did.

## II. ANALYSIS

On appeal, defendant first argues that he was denied a fair trial because the trial court found defense counsel in contempt during counsel's opening statement and after counsel repeatedly referenced a portion of the victim's SANE examination involving the discovery of redness to the victim's vagina.[1] The trial court imposed a fine and also sentenced counsel to spend the night in jail for the contempt. Although trial counsel did object to the trial court's decision to find him in contempt and require that he spend a night in jail, counsel did not argue that the contempt rulings affected his ability to represent defendant. "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996). Thus, to the extent defendant argues that the trial court's contempt ruling denied defendant a fair trial, the issue is not preserved.

A trial court's decision to hold an individual in contempt is generally reviewed for an abuse of discretion. *People v Kammeraad*, 307 Mich App 98, 146; 858 NW2d 490 (2014).

---

[1] We reach no conclusions as to the validity of the trial court's contempt rulings.

However, we review unpreserved issues for plain error affecting substantial rights. *People v Shenoskey*, 320 Mich App 80, 82; 903 NW2d 212 (2017). Under the plain-error rule, a defendant must establish that an error was plain (i.e., that it was clear or obvious), and that the error affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Preliminarily, to the extent that defendant argues that the trial court erred by twice holding defense counsel in contempt, and ordering counsel to spend the night in jail for the second contempt finding, defendant has not established that he has standing to challenge those decisions. Defendant was not personally fined or incarcerated as a result of the trial court's contempt decisions. Even in criminal matters, standing generally requires "a demonstration that the [party's] substantial interest will be detrimentally affected in a manner different from the citizenry at large." *People v Yeoman*, 218 Mich App 406, 420; 554 NW2d 577 (1996) (citation omitted). Because defendant was not personally subject to the penalties imposed against defense counsel for contempt, defendant does not have standing to challenge the underlying contempt rulings and penalties themselves. Further, the record does not indicate that the contempt rulings somehow prejudiced defense counsel's ability to pursue a defense on behalf of defendant, or otherwise affected the fairness of defendant's trial.

Additionally, nothing in the record suggests that defendant can demonstrate that the trial court's contempt decisions prejudiced defendant or his counsel. The first time the trial court found counsel in contempt involved defense counsel's complaint to the trial court that the prosecutor was intimidating defendant during opening statement by walking close to defendant and pointing a finger at him. Defense counsel's objection and the trial court's response occurred outside the presence of the jury. Defendant notes that this contempt finding followed the court's earlier admonishment to defense counsel to not "showboat" for the jury, during which the trial court also showed counsel its "contempt of court bench book" and put counsel on "notice." Defendant argues that such actions by the trial court constituted prejudicial conduct directed at defendant and his trial counsel. Again, however, the complained of actions occurred outside the presence of the jury.

The second time the court found defense counsel in contempt was when he told the jury during his opening statement that he expected to introduce the SANE report, which would show that the victim had vaginal redness. Following defense counsel's remarks, the trial judge excused the jury for the day, stating, in relevant part, ". . . there's a matter that's come up that is going to require me to address that outside your presence. And so we're gonna conclude our time today." The trial court then instructed the jury to return at 9:00 a.m. the following morning. No further information was provided to the jury regarding what matter the court was going to address. When the trial court again found defense counsel in contempt, all discussions and arguments were outside the presence of the jury. When trial began the next day, the trial court began court by asking defense counsel if he would like to proceed with his opening statement. From this question, the jury could not ascertain that anything had occurred relative to defendant or his counsel the previous day. We cannot find within the record any evidence that the trial court engaged in its contempt proceedings against defendant's counsel in the presence of the jury. Thus, on this record, there is no basis for concluding that the manner in which the trial court handled both contempt findings prejudiced defendant or defense counsel.

Defendant also argues that the trial court's pretrial rulings were unduly vague, leaving defense counsel with no way to know what he could discuss during opening statement. The issue regarding defendant's opening statement centered on whether defense counsel could use portion of the SANE report, specifically findings that the victim had engaged in sex with another man prior to the assault and that the victim had redness around her vagina area. The record discloses that the trial court and defense counsel had several extensive pretrial discussions about the admissibility of the SANE report itself, as well as other information in the report that could not be admitted. The prosecutor stated he did not intend to discuss the victim's vaginal redness as part of his case-in-chief. At one point, defense counsel agreed with the redaction of the SANE report to remove references to DNA results and the vaginal redness. Then defense counsel argued he wanted to use the evidence, eliciting a warning from the trial court that if he did not comply with the court's rulings, it could result in him being held in contempt. Even after defense counsel was held in contempt, the parties and the trial court had another discussion about what could be introduced or discussed before defense counsel continued his opening statement. Hence, there were numerous discussions between the trial court and defense counsel regarding these issues. Additionally, throughout the trial court's rulings on the SANE report and its ancillary issues, there was nothing contained in those trial court rulings that could be classified as vague.

Moreover, defendant has not shown how the court's rulings caused him to suffer prejudice relative to his ability to present a defense. Defense counsel repeatedly stated that he wanted to introduce evidence from the SANE report of the victim's vaginal redness to show that the victim did not have any other injuries, such as injuries to her arms from being treated roughly by defendant. Ultimately, the SANE report was admitted into evidence with the references to the redness unredacted. Moreover, testimony was presented that the victim suffered no other physical injuries.

Our review of the record leads us to conclude that defendant has failed to show that the trial court's decision to hold defense counsel in contempt had a chilling effect on defense counsel's performance, or otherwise prejudiced defendant in the eyes of the jury. Accordingly, defendant is not entitled to relief with respect to this issue. See *People v Pauli*, 138 Mich App 530, 544; 361 NW2d 359 (1984) (the trial court's admonishments of defense counsel did not have a chilling effect on defense counsel's performance because, "[e]ven after being chastised by the trial court, defense counsel vigorously pursued his case").

Defendant next argues that the trial court erred by restricting his cross-examination of the victim, and by overruling defense objections to the prosecutor's examination of the victim's mother and defendant's niece. Defendant preserved most of these claims with an appropriate objection or offer of proof at trial. "When the issue is preserved, we review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). Decisions concerning the scope of cross-examination are also reviewed for an abuse of discretion. *People v Green*, 313 Mich App 526, 535; 884 NW2d 838 (2015). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012).

Defendant argues that the trial court improperly precluded defense counsel from asking the victim when she ended her relationship with her boyfriend. He argues that, had the jury been informed that she ended the relationship shortly before the alleged assault, this information would have made it more likely that she was amenable to consensual sexual activity with defendant. The trial court sustained the prosecutor's relevancy objection to this question.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Evidence which is not relevant is not admissible." MRE 402. In analyzing a relevance issue, a reviewing court must first determine whether the evidence is material, then determine whether it has "probative force." *People v Mills*, 450 Mich 61, 67; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). To be material, a fact must be " 'within the range of litigated matters in controversy.' " *Id*. at 68, quoting *United States v Dunn*, 805 F2d 1275, 1281 (CA 6, 1986). The credibility of a witness is a material fact. *Id*. at 69. Testimony has probative force if it tends to make something more or less probable. *Id*. at 68.

The victim testified on direct examination that, sometime before June 24, 2017, she broke up with her then boyfriend, but the two continued living in the same apartment while the victim looked for another place to live. The victim also testified that she stayed at the apartment for less than a week after June 24, 2017, before moving in with her parents. On cross-examination, defense counsel asked the victim how many days before June 24 the breakup occurred. When the prosecutor objected on the basis of relevancy, defense counsel stated that the victim had acknowledged that she had just broken up with her boyfriend, and he wanted to further question her to support a claim that defendant had knowledge of this fact, which was why he was reaching out to her. The prosecutor countered that the exact date of the breakup was not relevant. Defendant did not make an offer of proof following the trial court sustaining the State's objection.

On appeal, defendant now argues that the victim's response to the exact date of the breakup would have been relevant to show that she would have been more likely to engage in a sexual relationship with defendant because her breakup was recent. Evidence of the breakup was relevant to demonstrate why defendant and the victim were once again contacting each other. Beyond that issue, we cannot glean any other relevance to that questioning. To make the presumption that defendant asks of this Court---that an individual would be more amenable to sexual relations based on a breakup from a prior relationship---is not only speculative, but somewhat disconcerting.

We note that preserved nonconstitutional error is only grounds for reversal if it is more probable than not that the error was outcome-determinative after examining the entire record. *People v Williams*, 483 Mich 226, 243; 769 NW2d 605 (2009). Here, even if we were to conclude that the trial court erred in its exclusion of this evidence, any error was harmless. The victim discussed her breakup at trial. In addition, the SANE nurse noted that the victim had told her that she had "just" broken up with her boyfriend. Further, defense counsel elicited testimony from the victim that the reason defendant gave in his text message for wanting to hang out with her now was that she no longer had a man. Nothing precluded defendant from relying on this evidence to advance an argument that the victim may have been more willing to engage in sex

with defendant, given that she was no longer involved in a committed relationship with someone else. In sum, because the jury was aware that the victim had recently broken up with her boyfriend, and the exact date of the breakup was not particularly significant, there is no reasonable probability that this limitation on cross-examination was outcome-determinative. On this record, we cannot glean evidence that would support a conclusion that exclusion of evidence regarding the exact date of the victim's breakup was outcome-determinative. Accordingly, defendant is not entitled to relief on this issue.

Defendant next argues that the trial court erroneously precluded defense counsel from asking the victim if she would have slept with defendant if he did not have a girlfriend. Defendant argues that, because the victim had sent a text message to defendant asking, "Why would I let you sleep with me if you are with [your fiancée?]," a rational implication of the message is that she considered the possibility of having sex with him, which is relevant to whether she later consented to doing so. The trial court did not abuse its discretion by precluding the proposed question because it called for the victim to speculate what she would have done under factual circumstances that simply did not exist at the time the assault occurred.

Defendant next argues that the trial court abused its discretion when it sustained the prosecutor's objection to defense counsel's question to the victim about how long she had been wearing the pants she was wearing at the time of the charged assault. Defendant ignores that the basis for the trial court's ruling was a lack of foundation, because the victim's clothing had not been introduced or admitted into evidence. Eventually, after her clothing could not be readily located, defense counsel waived the production of the clothing for purposes of the victim's testimony and, after a brief discussion, defense counsel moved on to another line of questioning. Defendant's appellate argument focuses on the alleged relevancy of the evidence, but defendant does not address the actual basis for the trial court's ruling, particularly in light of defense counsel's later waiver. Further, defendant does not explain how he was prejudiced by the lack of this information in light of other evidence presented at trial. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). We note that defense counsel was permitted to cross-examine the SANE nurse about the victim's clothing. The nurse explained that the victim's attire was unlikely to have contributed to the vaginal redness detected during the examination because of where the irritation was located. Defendant has not shown that he is entitled to relief with respect to this matter.

Defendant argues that the trial court abused its discretion by overruling defense counsel's objection to the prosecutor's question to the victim's mother concerning how often she spoke with the victim. However, apart from announcing his disagreement with the trial court's decision, defendant provides no substantive discussion of this claim of error. Accordingly, defendant has not properly presented this claim of error for review. *Kelly*, 231 Mich App at 640-641.

Defendant next argues that the trial court improperly allowed the prosecutor to recite some of defendant's statements from his police interview during the questioning of defendant's niece. Defendant raised a hearsay objection to this evidence at trial, but he now concedes on appeal that his statements were not inadmissible hearsay. Because defendant did not argue in the

trial court that this line of questioning was otherwise improper, this claim of error is unpreserved. "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *Asevedo*, 217 Mich App at 398. Therefore, we review this claim for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

Defendant provides no support for his assertion that it was improper for the prosecutor to ask defendant's niece whether she was aware of defendant's statements before her trial testimony. See *Kelly*, 231 Mich App 640-641. Further, defendant cannot show prejudice because the jury heard all of these statements. Accordingly, defendant has failed to demonstrate a plain error affecting his substantial rights. *Carines*, 460 Mich at 763.

Defendant next argues that there were several instances in which the trial court demonstrated its bias against him or his trial counsel. Defendant also argues that the trial court acted with partiality toward the prosecution, thereby denying defendant a fair trial. A party must raise a claim of judicial bias before the trial court to preserve the issue for appellate review. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Although defense counsel objected to certain decisions by the trial court, defendant did not raise the issue of judicial bias below. Thus, defendant acknowledges that this issue is not preserved.

A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias. *Id.* at 598. In determining whether a trial judge's comments or conduct deprives a defendant of a fair trial, this Court considers whether the "trial judge's conduct pierces the veil of judicial impartiality." *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id.* at 171. This is a fact-specific inquiry to be considered in the context of a given case. *Id.* at 171-172. It does not depend on whether the evidence supports the conviction or whether the conduct actually contributed to the verdict. *Id.* 171 n 3. "Rather, in considering improper influence, the reviewing court must determine whether the judge's conduct *was sufficiently severe and clear* so as to create the appearance of bias against the aggrieved party." *Id.* (Emphasis added). We must consider the "cumulative effect" of any errors. *Id.* at 171-172.

In evaluating the totality of the circumstances, this Court should consider a variety of factors, including any inappropriate conduct by the trial court, such as belittling counsel, inappropriate questioning of witnesses, inappropriate commentary, or providing inappropriate advice to either side. *Id.* at 172-173. This Court should also consider the tone and demeanor of the trial judge, which in certain circumstances can be determined by the nature of the words used by the judge. *Id.* at 175-176. Further, this Court should consider "the scope of judicial intervention within the context of the length and complexity of the trial," where a more complex issue may make it more appropriate for the judge to intervene to a greater extent, and it should also consider whether "the comments or questions were directed at one side more than the other." *Id.* at 176-177. The existence of a curative instruction, such as the standard one informing the jury that the judge's comments or questions are not evidence, or one directed at conduct that could give rise to the appearance of bias "will often ensure a fair trial despite minor or brief inappropriate conduct." *Id.* at 177. This list of factors is not exhaustive. *Id.* at 172.

Defendant first complains that the trial court improperly held defense counsel in contempt and then continued to treat counsel harshly as counsel tried to determine what he was permitted to discuss in relation to the SANE report and the victim's vaginal redness. As discussed earlier, the trial court's contempt decisions and its related comments to counsel all occurred outside the presence of the jury. Thus, this conduct could not have influenced the jury by creating an appearance of advocacy or partiality for or against a party. *Id.* at 171 & n 3.

In a related complaint, defendant complains that the trial court treated his counsel harshly by forcing counsel to "guess" about what he could say concerning the SANE report, insinuated that counsel was playing games, and ultimately decided to admit the SANE report with the reference to vaginal redness remaining intact. Again, all of this occurred outside the presence of the jury. Thus, these actions could not have created an appearance of advocacy or partiality for or against a party. *Id.* at 171 & n 3. Moreover, with respect to the trial court's actual ruling concerning the SANE report, defense counsel ultimately prevailed in his argument that the report should be admitted without redacting the reference to vaginal redness. Accordingly, there is no basis for inferring bias or partiality with respect to this matter.

Defendant complains that the trial court denigrated defense counsel in front of defendant when counsel tried to offer the victim's clothing into evidence. Again, however, as defendant acknowledges, this discussion occurred outside the presence of the jury. Therefore, it could not have influenced the jury against defendant.

Defendant next argues that the trial court treated the prosecutor differently from defense counsel during their questioning of prospective jurors, and he complains that the prosecutor was allowed to make numerous references to the victim's age.

With respect to defendant's claim that the prosecutor was treated differently by the trial court, defendant notes that the prosecutor was allowed to ask the jurors whether they agreed with the proposition that people could act differently when placed in stressful or traumatic situations. In contrast, when defense counsel asked a prospective juror three questions about how she would personally respond to an unwelcomed sexual solicitation sent via social media and whether she would contact the person, drive to the person's home, or ditch her friends and go for a ride, the trial court asked defense counsel to limit his questions to the juror's qualifications. Examination of the record therefore reveals that the types of questions asked by the prosecutor and defense counsel were qualitatively different. The prosecutor's general questions related to whether the prospective jurors had preconceived notions of how a person should be expected to react or whether the jurors agreed that the types of reactions would be different depending on the individual. Although defense counsel's questions also related to preconceived notions, they were based on specific facts of the case and were essentially designed to elicit a personal response from a juror about her own preconceived notions of the propriety of the victim's specific actions, implying that she could rely on them to decide the case. Had it been the prosecutor asking a juror to apply her own biases, it would have been grounds for a challenge for cause because a defendant has a right to a fair and impartial jury. *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441(1994). We cannot fault the trial court for restricting this line of questioning, particularly after it had already provided some leeway to defense counsel.

With respect to the prosecutor's reference to the victim's age, defense counsel also used the fact that the victim was young to promote a stereotype about a 19-year-old's capacity "to lie about a situation" in order to protect herself. Again, we cannot find any evidence of defendant's claim of impartiality, thus defendant is not entitled to relief.

Defendant next points to the trial court's correction of defense counsel when defense counsel inaccurately identified a law enforcement officer. Defendant complains that the trial court did not similarly correct the prosecutor when the prosecutor allegedly misstated the title of a law enforcement officer. The record reveals that defense counsel had difficulty with the officer's name, referring to the officer as both "Herman Joshua" and "Joshua Herman." At one point in the trial, the trial court intervened by merely stating, "Deputy Joshua Herman." The record also discloses that the prosecutor accurately referred to the Deputy as a sergeant, so there was no need for any correction. There is no evidence of partiality or bias with respect to this matter.

Defendant next argues that the trial court demonstrated partiality by the way it responded to a leading question by the prosecutor to the victim's mother. The trial court responded to defense counsel's question by stating, "Sit down. Thank you. All right. You can answer the question please." Although the trial court appeared to reject defense counsel's objection, the witness asked the prosecutor to repeat the question and the prosecutor restated it in such a way so that the question was no longer leading. To the extent that the trial court overruled counsel's objection, adverse rulings alone generally do not demonstrate judicial bias. *Cain v Dep't of Corrections*, 451 Mich 470, 497-498, 548 NW2d 210 (1996). The trial court's tone in telling defense counsel to sit down cannot be gleaned from the transcript itself, but there is nothing apparent from the trial court's brief response that demonstrates bias or partiality.

Defendant also appears to argue that the trial court should have stopped the prosecutor from referring to the sexual encounter as an "assault" in connection with this questioning because this somehow led the victim's mother to confirm the prosecutor's theory that defendant was guilty. However, this characterization was proper given the victim's testimony and the prosecutor's theory of the case. Moreover, the victim's mother had already testified that the victim had told her that defendant had assaulted her. We cannot discern any bias or partiality from the trial court's *failure to intervene* in this instance.

Defendant next complains that the trial court improperly overruled a defense objection to a question by the prosecutor that called for speculation by a witness. Although the prosecutor offered to rephrase the question, defendant does not explain how the court's ruling to overrule defense counsel's objection somehow conveyed to the jury that the court was biased against defendant or advocating for the prosecution. The apparent purpose of the question was to determine whether the witness's testimony may have been influenced by pressure from her family, which was a proper subject. Nothing in the trial court's response suggests that the court demonstrated advocacy or partiality for or against a party.

Defendant also points to a number of instances where the trial court allegedly "cut off" defense counsel's cross-examination of the victim.

Defendant begins this argument by directing this Court to the trial court interrupting defense counsel's questioning regarding the victim's decision to ask defendant why he was soliciting her for sex. The record discloses that the trial court acted within its discretion under MRE 611(a) to exercise reasonable control over the interrogation of witnesses. Before the trial court instructed defense counsel to "move on," defense counsel had already asked the victim that question and she had answered it. In addition, this line of questioning was, at best, only marginally relevant to the question of consent. The mere fact that the trial court ruled adversely to defendant does not demonstrate bias, and the court's ruling did not create an appearance of advocacy or partiality against defendant.

Defendant also discusses the trial court's response to defense questioning about why the victim agreed to ride with defendant after he repeatedly told her that he wanted to have sex with her. The prosecutor objected that the question had been repeatedly asked and answered, and defense counsel acknowledged that he did not remember whether he had already asked the question. Moreover, the trial court merely sustained the objection. Although defendant complains that the trial court did not chastise the prosecutor for the form of his objection, defendant does not explain how the trial court's failure to do so demonstrates bias or partiality in favor of the prosecutor or against defendant.

Defendant also takes issue with the trial court's decision to foreclose repeated questioning of the victim about how she wound up following defendant while the two drove in their separate vehicles. The trial court sustained the prosecutor's objection that the question had previously been asked and answered "quite a bit" the prior day. Defendant acknowledges that defense counsel had asked a number of questions about this topic in an attempt to portray the victim's responses to defendant's text messages as flirtatious. In addition, as with defendant's other claims of error concerning cross-examination, defendant has not shown how any adverse evidentiary ruling had the clear effect of creating an impression that the trial court was biased against defendant or defense counsel.

Defendant also discusses the trial court's response to another attempt to cross-examine the victim about where she had driven before joining defendant in his truck. The trial court stated:

> MRE 611. Ask a question, please, Mr. Galen. I'm trying to be patient . . . . You know, we're all here. We have a very limited amount of time . . . . So would you please move it along.

To the extent that the trial court's comment expressed impatience at counsel's somewhat wandering cross-examination, it was not "severe" and it did not "clearly" demonstrate advocacy or partiality for or against a party. Also, the statement did not "clearly" demonstrate advocacy or partiality for or against a party. *Stevens*, 498 Mich at 171 & n 3.

At the conclusion of trial, the trial court instructed the jury that its comments, rulings, summary of the evidence, and instructions were not evidence, and it further explained:

[W]hen I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about the case. If you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion. You are the only judges of the facts, and you should decide this case from the evidence.

Following our review of the record, we conclude that this instruction was sufficient to protect defendant's right to a fair trial. *Id.* at 177. We reach this conclusion because the record does not support defendant's argument that the trial court was biased against him or defense counsel. Moreover, considering the totality of defendant's complaints in light of the entire trial record, there is no reasonable likelihood that the trial court's conduct improperly influenced the jury by creating an appearance of advocacy or partiality for the prosecution or against defendant.

Defendant raises a concurrent claim of ineffective assistance of counsel with respect to this issue. In support of this claim, defendant simply asserts that he was denied the effective assistance of counsel to the extent that the trial court may have acted reasonably in response to defense counsel's deliberate or intentional disobedience of the court's orders. Because defendant fails to provide any further argument in support of this claim, it is abandoned. *Kelly*, 231 Mich App at 640-641. In any event, the record does not reveal deliberate improper action by defense counsel. Thus, defendant has not established the factual predicate for this ineffective-assistance claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant next argues that resentencing is required because the trial court erroneously scored the sentencing guidelines. Specifically, defendant challenges the scoring of offense variables (OVs) 3, 8, and 10. When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* A finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008).

## A. OV 3

MCL 777.33(1)(d) directs a trial court to assess 10 points for OV 3 when "[b]odily injury requiring medical treatment occurred to a victim." Conversely, only five points are to be scored when "[b]odily injury not requiring medical treatment occurred to a victim." MCL 777.33(1)(d). If "[n]o physical injury occurred to a victim," a trial court must assess zero points for OV 3. MCL 777.33(1)(f). For purposes of OV 3, a " 'bodily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). An "injury requiring medical treatment" refers to "the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3).

In this case, there was evidence that the victim suffered a "bodily injury" for purposes of OV 3. The SANE nurse testified that she found redness on the victim's labia minora and labia

majora; she described the redness as an "irritation." This constituted evidence of "some unwanted physically damaging consequence." *McDonald*, 293 Mich App at 298. Moreover, the victim stated that the intercourse was very painful and uncomfortable, which is evidence of an "unwanted physically damaging consequence." *Id*. However, similar to *People v Armstrong*, 305 Mich App 230, 246; 851 NW2d 856 (2014), there was no evidence that "medical treatment was necessary for [the] injury." In *Armstrong*, there was evidence that the complainant suffered from a "reddened and tender hymen," which was revealed during a SANE examination. This Court disagreed with the prosecution's argument that this evidence supported a 10-point score for OV 3. *Id*. at 246. This Court noted that neither the complainant nor others testified that the complainant received any medical treatment, other than the taking of DNA samples. This Court explained that a court could not assume that all bodily injuries require medical treatment, otherwise the portion of the statute authorizing a five-point score for injures that do not require medical treatment would be rendered "surplusage." *Id*. This Court held that "a preponderance of the record evidence did not support the trial court's determination that the complainant required medical treatment." *Id*. at 247.

Similarly, in this case, the SANE examiner performed a forensic physical examination for purposes of preparing a SANE report. The only physical evidence of the assault was the victim's vaginal redness. As in *Armstrong*, other than the taking of the buccal swab and an examination of the victim's vaginal area, there was no evidence that the victim received, sought, or necessitated medical treatment for a bodily injury. That is not to say that a forensic or similar physical examination could never result in the necessity of medical treatment, even as a prophylactic measure. See *McDonald*, 293 Mich App at 298 (holding that OV 3 should be scored at 10 points when there is some medical treatment, even if the treatment is "precautionary," and presumably for the victim's "infection as a consequence of the rape"). In this case, however, there was neither testimony nor other evidence that any medical treatment was administered as part of the SANE examination itself. Therefore, as in *Armstrong*, the trial court erred by assessing 10 points for OV 3. At most, the evidence showed that the victim suffered a bodily injury that did not necessitate medical treatment. Therefore, only five points should have been assessed for OV 3. MCL 777.33(1)(d).

### B. OV 8

MCL 777.38 provides that 15 points should be scored for OV 8 when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." The evidence in this case indicated that when defendant began touching the victim inside his truck, he told her that he needed to find "somewhere for us to hide." He then purposefully drove the victim to a remote area outside of town where he sexually assaulted her. The act of taking the victim away from the presence of others is sufficient to show asportation under OV 8. *People v Barrera*, 500 Mich 14, 22; 892 NW2d 789, 794 (2017); *Chelmicki*, 305 Mich App at 70-71. Accordingly, the trial court did not err by assessing 15 points for OV 8.

### C. OV 10

Defendant challenges the 15-point score for OV 10, which is the appropriate score when a defendant exploits a vulnerable victim and predatory conduct was involved. MCL

777.40(1)(a). In *People v Huston*, 489 Mich 451; 802 NW2d 261 (2011), our Supreme Court explained:

> [T]o assess 15 points for OV 10, a court must find that an offender engaged in predatory conduct and exploited a vulnerable victim, using only the statutory definition of "vulnerability." Again, MCL 777.40(3)(c) defines "vulnerability" as the "readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation," and such vulnerability may or may not arise from the explicitly listed characteristics, relationships, and circumstances set forth in subdivisions (b) and (c). The statute does not mandate that this "susceptibility" be inherent in the victim. Rather, the statutory language allows for susceptibility arising from external circumstances as well. [*Huston*, 489 Mich at 466.]

With respect to vulnerability, in *People v Cannon*, 481 Mich 152, 158-159; 749 NW2d 257 (2008), our Supreme Court listed factors to be considered by a sentencing court when determining whether a victim was vulnerable. Those factors include the expressly listed characteristics, relationships, and circumstances identified in subdivisions (b) and (c), which are:

> (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. [*Id.*]

With respect to "predatory conduct," the *Huston* Court also noted that MCL 777.40(3)(a) defines that term as "preoffense conduct directed at a victim, or law enforcement officer posing as a potential victim, for the primary purpose of victimization," but does not require that the preoffense conduct be directed toward the ultimate victim of the crime. *Huston*, 489 Mich at 459-460. The Court held that predatory conduct encompasses "only those forms of 'preoffense conduct' that are commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or 'preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." *Id.* at 462, citing *Cannon*, 481 Mich at 162. In order to find that a defendant engaged in predatory conduct, the Court provided three analytical questions that a trial court must answer affirmatively before it may properly assess 15 points for OV 10:

> (1) Did the offender engage in conduct before the commission of the offense?

> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct? [*Cannon*, 481 Mich at 161.]

Essentially then, because *Huston* has extended the definition of a vulnerable victim to individuals who are not "inherently" vulnerable, the second question or requirement in *Cannon* now also applies to circumstances in which a defendant takes affirmative steps to make the victim susceptible to injury, physical restraint, persuasion, or temptation or where the defendant takes advantage of other circumstances, such as darkness or isolation, which render the victim vulnerable. *Huston*, 489 Mich at 467.

In this case, the trial court focused on defendant's actions before the night of the assault, such as his repeated Facebook posts, as well as the prior "relationship" that the two shared because of the fact that the victim was the best friend of defendant's niece. Defendant argues that the victim was not inherently vulnerable simply because she knew defendant, even if they were close. The prosecutor argues that the victim was vulnerable because defendant successfully used his strength to assault the victim, but there is no evidence that the victim was physically weak. We are also unpersuaded that defendant's suggestive text messages support a finding that he planned to sexually assault the victim if she did not agree to consensual sex. However, immediately before the assault, defendant drove the victim to a remote area in order to commit the assault. The victim was rendered "vulnerable" once defendant isolated her. Further, the evidence demonstrates that defendant's "primary purpose" of driving the victim to the remote area was to exploit the vulnerability he had created. This conduct qualifies as "predatory" in a manner similar to cases involving lying in wait or stalking, rather than simple opportunism or "run-of-the-mill planning" to commit an assault. Therefore, the trial court did not err when it assessed 15 points for OV 10.

### D. REMEDY

We have concluded that the trial court did not err by scoring OV 8 or OV 10, but erroneously assessed 10 points, instead of 5 points, for OV 3. The trial court's scoring error requires resentencing. Defendant received 100 total offense variable points, which is the minimum number of points necessary to place him in OV Level VI (100+ points) of the applicable sentencing grid for first-degree criminal sexual conduct, a class A offense. MCL 777.62; MCL 777.16y. Defendant received a prior record variable (PRV) score of 20 points, placing him in PRV Level C. These scores resulted in a sentencing guidelines range of 135 to 225 months. MCL 777.62. A five-point reduction to defendant's OV score will place him in OV Level V (80-99 points), and reduce his guidelines range to 126 to 210 months. MCL 777.62. Because the scoring error affects the appropriate guidelines range, defendant is entitled to be resentenced. *People v Carter*, 503 Mich 221, 223; 931 NW2d 566 (2019); *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006).

Defendant also argues that the trial court erred by ordering his sentence for one count of CSC-I to be served consecutively to his other sentences. The trial court had discretion to impose a consecutive sentence under MCL 750.520b(3). However, the trial court was required to articulate reasons on the record for each consecutive sentence ordered. *People v Norfleet*, 317 Mich App 649, 664-665; 897 NW2d 195 (2016). ("Review of a discretionary sentence requires that the trial court set forth the reasons underlying its decision"). *Id.* at 664. In this case, the trial court provided no reasons for its decision to impose a consecutive sentence. Accordingly, on remand, should the trial court again decide to impose a consecutive sentence on resentencing, it must provide its reasons for doing so on the record.

We affirm defendant's convictions, but vacate his sentences and remand for resentencing. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Michael J. Kelly