PEOPLE v McDONALD

Docket No. 297889. Submitted June 7, 2011, at Detroit. Decided July 12, 2011, at 9:05 a.m. Leave to appeal denied, 491 Mich 851.

A jury in the Wayne Circuit Court, David J. Allen, J., convicted Deandre M. McDonald of kidnapping, armed robbery, and first-degree criminal sexual conduct. Defendant appealed, arguing in part that testimony of the emergency room attending physician (who was present in the emergency room but did not perform the sexual-assault examination) constituted inadmissible hearsay and deprived defendant of his right to confront the witnesses against him. In addition, defendant challenged the scoring of three offense variables under the sentencing guidelines.

The Court of Appeals *held*:

1. Defendant failed to object to the testimony of Dr. Patrick Loeckner regarding the sexual-assault examination. Dr. Saiyeda Abbas, the physician who performed the examination, did not testify at trial, and defense counsel affirmatively stated that he had no objection to Abbas's notes being admitted. Even if Loeckner's testimony constituted inadmissible hearsay, reversal was not warranted because defendant was unable to demonstrate that he was prejudiced by the testimony. The gravamen of defendant's argument was that the examination was mishandled and the rape kit contaminated, but independent forensic scientists also matched defendant's DNA to evidence from the crime. Moreover, given defendant's partial reliance during closing argument on Loeckner's testimony that no sperm was observed during the examination, any error did not affect the fairness, integrity, or public reputation of the proceedings.

2. The trial court did not deprive defendant of due process or violate MCR 6.414(J) by asking the jury to rely on its collective memory instead of granting its request to review the transcripts of certain testimony. The trial court denied the request "at this time," and defendant agreed to the denial given that deliberations had only lasted one hour. It might have been better practice to have expressly informed the jury that they could make another

transcript request in the future, but the trial court did not foreclose the possibility of the jury obtaining transcripts in the future.

3. The trial court properly assessed 10 points for OV 3, MCL 777.33 (physical injury to victim). An infection the victim suffered as the result of the sexual assault constituted a "bodily injury requiring medical treatment" under MCL 777.33(2)(d).

4. The trial court properly assessed 50 points for OV 7, MCL 777.37 (aggravated physical abuse). Defendant ordered the victim to keep her eyes closed and stated that he and what he implied were accomplices had watched her and knew where she lived. This was sufficient to establish that defendant engaged in "conduct designed to substantially increase [her] fear and anxiety" and supported the assessment of 50 points under MCL 777.37(1)(a).

5. The trial court assessed 10 points for OV 19, MCL 777.49 (interference with the administration of justice). The court did not err by considering postoffense conduct. Defendant's threats that he knew the victim's identity and where she lived implied that she could be found in the future. Defendant was convicted of a criminal sexual conduct offense that involved the commission of an ongoing felony. In this case, the victim was not free from restraint until she was out of the car and out of range for being shot by the gun defendant had trained on her. Moreover, even though the trial court only assessed 10 points for OV 19, defendant's threats were in fact sufficient to have supported an even higher assessment of 15 points.

Affirmed.

1. CRIMINAL LAW — DUE PROCESS — JURY — REQUEST TO REVIEW TRANSCRIPTS.

A trial court's denial of an initial jury request to review transcripts of certain testimony without foreclosing the possibility of future requests being granted does not deprive the defendant of due process or violate MCR 6.414(J), which governs jury requests to review evidence.

2. SENTENCES — SENTENCING GUIDELINES — CALCULATIONS — OFFENSE VARIABLE 3.

An infection suffered by the victim as the result of a sexual assault constitutes a "bodily injury requiring medical treatment" that justifies the assessment of 10 points under offense variable 3 of the sentencing guidelines (physical injury to victim) (MCL 777.33[1][d]).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Jason W. Williams*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Christopher M. Smith*) for defendant.

Before: FORT HOOD, P.J., and DONOFRIO and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. Defendant appeals by right his convictions by a jury of kidnapping, MCL 750.349, armed robbery, MCL 750.529, and first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c). Defendant was acquitted of felony-firearm, MCL 750.227b, and two counts of second-degree criminal sexual conduct, (CSC-II), MCL 750.520c(1)(c). Defendant also appeals his sentences of 225 months' to 60 years' imprisonment on each of his three convictions. The kidnapping and armed robbery sentences were to be served concurrently but, pursuant to MCL 750.520b(3), were to be served consecutively to his CSC-I sentence. The evidence supporting defendant's convictions was largely, although not exclusively, based on DNA evidence collected at a hospital. We affirm.

While walking home from work in Detroit, the victim was accosted, ordered into a car, robbed, and raped at gunpoint by a man. She got a good look at the man's face before he ordered her not to look at him. Among other things, the man took her cell phone. She almost immediately happened across an ambulance when he finally let her go and was taken to the hospital. A sexual-assault examination was performed after some delay; numerous swabs and samples were taken and

packaged into a "rape kit," a sealed container for sexual-assault evidence. Meanwhile, the police tracked the victim's cell phone to a barbershop, then to a person who was in a relationship with defendant's brother, and finally to defendant. DNA evidence was obtained from defendant. The victim was unable to select a photograph of defendant out of a photographic lineup, although the quality of the photographs was apparently very poor. Defendant refused to participate in a corporeal or voice lineup, but the victim was able to identify defendant as the rapist in court and from a photograph she found of him on the Internet through independent research. Two different forensic scientists in unrelated crime laboratories analyzed actual sperm cells found in the rape kit and matched them to defendant's DNA. It was established that at no time was a "sperm sample" obtained from defendant.

Defendant first argues that it was error to permit the emergency room attending physician, Dr. Patrick Loeckner, to testify about the sexual-assault examination because he did not administer it himself. The doctor who personally performed the examination, Dr. Saiyeda Abbas, did not testify at trial. Defendant argues that this constituted inadmissible hearsay and was a violation of his right to confront the witnesses against him. We find no basis for reversal.

Defendant did not object to Dr. Loeckner's testimony and affirmatively stated that he had no objection to the admission of Dr. Abbas's notes. The former failure to object constituted mere forfeiture of an error, while the latter affirmative approval constituted a waiver. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). Unpreserved claims of error that are not waived are reviewed for "plain error," meaning that there must be obvious error that caused a defendant actual prejudice.

Reversal is not warranted unless the defendant was actually innocent or the error fundamentally undermined the integrity of the proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). This same standard of review applies to unpreserved claims of both nonconstitutional and constitutional error. *Id.* at 761-767.

Even if we were to presume that Dr. Loeckner's testimony constituted inadmissible hearsay, there was no prejudice. Dr. Loeckner's testimony helped defendant, if anything. Dr. Loeckner admitted that he did not know whether Dr. Abbas had really followed the proper protocols. Furthermore, Dr. Loeckner's testimony brought out the fact that no semen was observed during the examination, a fact that defendant made use of during closing argument.

Moreover, the gravamen of defendant's argument regarding Dr. Loeckner's testimony has less to do with who testified than with the implication that the sexual-assault examination was mishandled and the rape kit contaminated, thereby undermining the reliability of both. However, the rest of the evidence overwhelmingly shows that no such thing was possible. Even if Dr. Abbas hypothetically had not fully followed proper protocols, two separate forensic scientists in two different accredited crime laboratories matched defendant to the sperm cells found during the sexual-assault examination, and they did so without consulting each other. Because the victim's DNA was also found on the items in that particular rape kit, it had clearly not become intermingled with evidence from another investigation. Defendant implies that the rape kit at the hospital could have been mishandled in such a way that his sperm could have gotten into it, but there is absolutely no evidence in the record from which such an extraordi-

nary conclusion could be drawn. Indeed, it is a patently ridiculous implication because the forensic scientists explicitly analyzed *actual sperm cells* that were found to contain defendant's DNA. The only way the rape kit could have been contaminated would be if the police or the doctors had somehow *obtained a sperm sample* from defendant, which they did not. The DNA samples they took from defendant came from his *mouth*. Finally, old-fashioned detective work led the police to defendant, and the victim identified defendant as the rapist in court and from a photograph she found.

Even if error occurred, reversal is not warranted because defendant is *not* actually innocent. Given defendant's partial reliance on Dr. Loekner's testimony, to which he did not object, the error did not affect the fairness, integrity, or public reputation of the proceedings. *Carines*, 460 Mich at 763.

Defendant next argues that the trial court deprived him of due process and violated MCR 6.414(J) because of the way in which it asked the jury to rely on its collective memory instead of granting its request to review transcripts of certain testimony. We disagree. It might have been better practice to have told the jury explicitly that if they continued to feel a need for a transcript in the future, they could make another request. However, the trial court emphasized that it was merely denying their request "at this time," and given that it was only an hour into deliberations, defendant agreed that for the time being the request should be denied. The trial court did not tell the jury that transcripts would be unavailable for weeks or months or not available at all. See *People v Smith*, 396 Mich 109, 110-111; 240 NW2d 202 (1976). Because the trial court did not foreclose the possibility of the jury obtaining transcripts in the future it did not violate MCR 6.414(J).

Finally, defendant argues that the trial court misscored three offense variables when calculating his recommended minimum sentence range under the sentencing guidelines. We disagree and in addition conclude that the trial court in fact assessed too few points for one of his offense variables.

We review the interpretation and application of the sentencing guidelines de novo. *People v Smith*, 488 Mich 193, 198; 793 NW2d 666 (2010)

Ten points should be assessed for offense variable (OV) 3 if "[b]odily injury requiring medical treatment occurred to a victim[.]" MCL 777.33(1)(d). The victim did not suffer any acute physical trauma or injury as a result of the rape and most of the medical treatment she received was precautionary. However, "bodily injury" encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence. See *People v Cathey*, 261 Mich App 506, 513-517; 681 NW2d 661 (2004). In that case, this Court held that *in the context of a criminal sexual conduct offense*, a resulting pregnancy constituted bodily injury, even though in most other contexts it would be considered quite the opposite. See *id*. at 514 n 5. The evidence here established that the victim suffered an infection as a consequence of the rape. This is sufficient to constitute "bodily injury requiring medical treatment" within the meaning of OV 3.

Fifty points should be assessed for OV 7 if a "victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]" MCL 777.37(1)(a). Defendant ordered the victim to keep her eyes closed and indicated that he and what he implied were accomplices knew who she was and had been watching her. He also made threats that clearly

indicated that he could find her again in the future, thereby suggesting not only that she was suffering a horrific assault but that there might never be any escape, either. Defendant argues 50 points should not have been assessed for OV 7 because there was no evidence of overt sadism, torture, or physical brutality beyond what was technically necessary to accomplish the charged offenses. However, even though the victim eventually concluded that defendant really did not know her identity there was ample evidence that defendant engaged in "conduct designed to substantially increase [her] fear and anxiety . . . ." Therefore, OV 7 was properly scored at 50 points.

Fifteen points should be assessed for OV 19 if a defendant "used force or the threat of force . . . to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services[.]" MCL 777.49(b). Ten points should be assessed if the defendant "otherwise interfered with or attempted to interfere with the administration of justice[.]" MCL 777.49(c). The trial court assessed 10 points for OV 19.

Defendant asserts that the trial court impermissibly scored OV 19 on the basis of conduct that occurred after the completion of the charged offenses because the offense variable does not explicitly permit the court to do so. See *People v McGraw*, 484 Mich 120, 135; 771 NW2d 655 (2009). However, our Supreme Court has explained that OV 19 contemplates post-offense conduct by necessary implication. *Smith*, 488 Mich at 200. Even if it did not, defendant's statements that he knew who the victim was and that his "boys" had been watching her were obvious threats that transpired *during* the kidnapping. Any person would interpret that as an implication that she or he could be found

again in the future. Furthermore, defendant required the victim to promise not to contact the police *as a condition of releasing her*. Defendant accurately notes that the victim only gave this testimony at the preliminary examination. However, the trial court properly considered testimony from the preliminary examination at sentencing. See *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993). And a threat to kill a victim to prevent that victim from reporting a crime would warrant assessing 15 points for OV 19. *People v Endres*, 269 Mich App 414, 420-422; 711 NW2d 398 (2006).

Finally we note the specific criminal sexual conduct offense for which defendant was charged and convicted was sexual penetration involving the commission of another felony. MCL 750.520b(1)(c). The underlying felony is therefore part of the criminal sexual conduct offense itself. Armed robbery, MCL 750.529, proscribes conduct that includes an assault and a felonious taking of property from the victim's presence or person while the defendant is armed with a weapon, *People v Smith*, 478 Mich 292, 319; 733 NW2d 351 (2007), and as such includes flight or attempted flight after the commission of the larceny, or attempts to retain possession of the stolen items, see MCL 750.530(2). Kidnapping is defined as restraining another person, meaning restricting or confining their liberty, and thus necessarily is an ongoing offense until the victim is released. MCL 750.349(2); see also *People v Behm*, 45 Mich App 614, 620-621; 207 NW2d 200 (1973). In this case the victim's liberty was not free from restraint until she was not only out of defendant's car, but out of shooting range— after all, the defendant had a gun trained on her even after she exited the car. Therefore, even if defendant had not made the threat to the victim until she was already walking away, none of defendant's charged

offenses were complete until it was clear that he could no longer change his mind and order her back into the car and OV 19 should be scored.

If there is any error at all in this matter, it is that defendant received a lower score for OV 19 than was actually justified. We will not, however, require that score changed because no cross-appeal has been filed.

Affirmed.

FORT HOOD, P.J., and DONOFRIO, J., concurred with RONAYNE KRAUSE, J.