# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID KENNETH RENTSCH,

        Defendant-Appellant.

UNPUBLISHED
August 11, 2016

No. 326778
Oakland Circuit Court
LC No. 2014-249056-FC

Before: K. F. KELLY, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant, David Kenneth Rentsch, appeals by right his jury conviction of armed robbery. MCL 750.529. The trial court sentenced Rentsch as a fourth-offense habitual offender, see MCL 769.12, to serve 25 to 50 years in prison. For the reasons explained below, we affirm Rentsch's conviction, but order a *Crosby* remand.[1]

## I. BASIC FACTS

Testimony and evidence established that Rentsch participated in three robberies between the evening of March 15, 2013, and the morning of March 18, 2013. The first robbery occurred on March 15 at a 7-Eleven in Green Oaks Township. The second robbery occurred at night on March 17 at a Mobil gas station in Novi. The third robbery occurred the next morning at a BP gas station in Brighton. The trial at issue was for the robbery of the Mobil gas station.

The primary issue at trial involved Rentsch's identity as the robber depicted in the video from the Mobil robbery. The still photographs from the video were not of high quality and the clerk working at the Mobil station, Brian Singer, was not able to identify Rentsch as the robber. However, the prosecution introduced evidence from the 7-Eleven and BP robberies. The victims from those robberies testified and the trial court allowed the admission of video evidence from those robberies.

---

[1] See *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

-1-

Tessandra Velentzas testified concerning the 7-Eleven robbery and stated that Rentsch could have been the robber involved there, but she was unsure. Lorin Olsztyn identified Rentsch as the robber involved in the BP robbery. Additionally, the prosecution offered evidence tending to establish Rentsch's location from just before the 7-Eleven robbery until his arrest following the BP robbery. The prosecution relied on the victims' testimony, testimony from Trina Sevelis, who was with Rentsch throughout the morning of March 18, testimony from investigating officers, and testimony from Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agent Stan Brue, who analyzed when and where Rentsch's cell phone was used. Finally, the prosecution presented evidence that police officers recovered clothing from Rentsch's truck that matched clothing worn by the person involved in each robbery.

## II. OTHER ACTS EVIDENCE

Rentsch argues that the trial court erred when it allowed the prosecution to introduce evidence concerning the 7-Eleven and BP robberies. The trial court allowed the prosecution to introduce evidence concerning the 7-Eleven and BP robberies because the evidence was necessary to show scheme or intent, and to establish Rentsch's identity as the robber. The trial court also concluded that the evidence would be more probative than prejudicial. We review a trial court's decision to admit evidence for an abuse of discretion. *People v Sabin (After Remand)*, 463 Mich 43, 55; 614 NW2d 888 (2000).

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." MRE 404(b)(1). Evidence of other acts may properly be admitted, however, under certain circumstances, notwithstanding the fact that the evidence might implicate character. See *People v VanderVliet*, 444 Mich 52, 60-64, 74; 508 NW2d 114 (1993). First, the evidence must be offered for a permissible, non-propensity purpose. *Id*. at 74; *People v Knox*, 469 Mich 502, 511; 674 NW2d 366 (2004). MRE 404(b) provides a non-exhaustive list of examples, two of which are relevant here: a scheme, plan, or system of doing an act, and identity.

The second consideration is that the evidence must be relevant, *VanderVliet*, 444 Mich at 74; MRE 401, whereas the third consideration is whether the evidence should be excluded under MRE 403 as substantially more prejudicial than probative. *Id*. at 71-72, 74. "[M]ost evidence presented against a criminal defendant" is "damaging and prejudicial," *People v Railer*, 288 Mich App 213, 220-221; 792 NW2d 776 (2010), but is not necessarily substantially more prejudicial than probative. When weighing "probative value against prejudicial effect," we "balanc[e] several factors, including" "whether the evidence is needlessly cumulative, how directly the evidence tends to prove [a] fact . . . , how essential the fact . . . is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). Finally, " 'the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted,' " *VanderVliet*, 444 Mich at 74, quoting *Huddleston v United States*, 485 US 681, 691-692; 108 S Ct 1496; 99 L Ed 2d 771 (1988), which can "minimize[] the prejudicial effect of the bad-acts evidence," *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011).

When considering whether other act evidence was offered to prove a common scheme, plan, or system, we consider whether " 'the uncharged misconduct and the charged offense are sufficiently similar.' " *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009), quoting *Sabin*, 463 Mich at 63. "There must be *such a concurrence of common features* that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design." *Id*. (emphasis in original). But "a high degree of similarity is not required, nor are distinctive or unusual features required to be present in both the charged and the uncharged acts." *Id*. at 480. When compared to the typical method of offering other acts evidence to prove identity, "the necessary degree of similarity is . . . less than that needed to prove identity." *Sabin*, 463 Mich at 65.

Other acts evidence can also be offered " 'to show identification through modus operandi.' " *People v Smith*, 243 Mich App 657, 671; 625 NW2d 46 (2000), quoting *People v Ho*, 231 Mich App 178, 186; 585 NW2d 357 (1998). The like act may not "simply [be] another crime of the same general category or even of the same specific character." *People v Golochowicz*, 413 Mich 298, 311; 319 NW2d 518 (1982). Rather, the charged act and other acts offered must be "so nearly identical in method as to earmark the charged offense as the handiwork of the accused," and "be so unusual and distinctive as to be like a signature." *Id*. at 310-311 (internal quotations and alterations omitted).

The evidence from the 7-Eleven and BP robberies was offered for a proper, non-propensity purpose. There was significant evidence that the person who committed the three robberies at issue used a common scheme, plan, or system in committing the robberies. The robberies occurred over a three day period at businesses that each sold gas. The robberies all occurred near I-96 and involved the robber placing a gun on the counter and requesting money. The robber was also quite calm during each robbery and wore jeans, gloves, and a head covering. In addition, there was evidence that, shortly after each robbery, Rentsch called Deshawn Hugle and drove toward Detroit. Accordingly, the three robberies were sufficiently similar to support an inference that they were part of a common plan, scheme, or system. *Sabin*, 463 Mich at 63.

We acknowledge that the robberies had differences. They did not all occur at the same time of day, occur in the same town, or involve the robber wearing the same exact clothing. The robber asked for a particular brand of cigarettes in some robberies, but not others. Additionally, what was presumably Rentsch's red truck was only seen in the BP robbery. However, the acts contain many similarities as in *Ho*, 231 Mich App at 186-187, where the Court upheld the admission of other acts to prove identity. Moreover, to the extent this might be viewed as "a close evidentiary question," a "trial court's decision on a close evidentiary question . . . cannot be an abuse of discretion," *Sabin*, 463 Mich at 67. Further, the evidence shows identity through other evidence.

First, Brue's tracking of Rentsch's cell phone over the three day time period is consistent with Rentsch being at the Mobil robbery. Additionally, this tracking shows a pattern of travel back and forth between Brighton and Detroit over the three days in which the robberies were committed.

Second, while the robber was not wearing the same clothes in all three robberies, officers arrested Rentsch near a truck containing clothing that was consistent with that worn during the robberies. The clothing included: a hat, jeans, a North Face coat similar to the one worn by the robber of the 7-Eleven, gloves that were similar to those worn by the robber of the 7-Eleven, a white shirt, sweatshirt, ski mask, and gloves similar to that worn by the robber of the Mobil gas station, and "black cotton or knit gloves" and "[b]rown work boots" "similar to [those] worn by" the robber of the BP gas station. This specific collection of otherwise innocuous clothing suggests that one person committed each of the robberies and, because there was strong evidence that Rentsch committed the 7-Eleven and BP robberies, a reasonable jury could conclude that he was also the person who robbed the Mobil gas station. Accordingly, the evidence from the other robberies was probative to prove identity. MRE 401.

Evidence of the other robberies was no doubt "damaging and prejudicial." *Railer*, 288 Mich App at 220-221. But the evidence was highly probative of the disputed issue of identity. *Blackston*, 481 Mich at 462. Evidence of the other robberies was also not "needlessly cumulative" of evidence of identity associated with the robbery at the Mobil gas station. *Id*. And, as Singer could not identify the robber of the Mobil gas station and the photos of the robbery provided to us do not provide a clear picture of the robber, it does not appear that there was other evidence with less "harmful collateral effects" that could have been offered to establish identity. *Id*. Therefore, the evidence was not substantially more prejudicial than probative. Further, the trial court also properly instructed the jury to consider the evidence only for a proper purpose. *Cameron*, 291 Mich App at 612.

### III. SENTENCING ISSUES

#### A. OV 19

Rentsch next argues that the trial court erred in scoring Offense Variable (OV) 19, which addresses a "threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." MCL 777.49. " '[T]he plain and ordinary meaning of "interfere with the administration of justice" . . . is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process.' " *People v Sours*, ___ Mich App ___; ___ NW2d ___ (2016), slip op at 2, quoting *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013), quoting MCL 777.49(c) (altered here). The variable "is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *Id*.

A trial court must assign 25 points to OV 19 when the defendant "threatened the security of a penal institution or court." MCL 777.49(a). When the defendant "used force or the threat of force against another person or the property of another to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services," the trial court must assign 15 points. MCL 777.49(b). The trial court must assign 10 points when the defendant "otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). "The phrase 'interfered with or attempted to interfere with the administration of justice' is broad." *Steele*, 283 Mich App at 492, quoting *People v Barbee*, 470 Mich 283, 286; 681 NW2d 348 (2004). Ten points can be assigned when a victim is told not to speak to the police, *id*. at 492-493, when a victim or witness is threatened,

*Hershey*, 303 Mich App at 343-344, when a victim is impliedly threatened, *People v McDonald*, 293 Mich App 292, 299-300; 811 NW2d 507 (2011), or when a defendant otherwise "attempt[s] to deceive the police during [an] investigation," *Hershey*, 303 Mich App at 343-344.

In this case, the trial court assigned 10 points to OV 19 because Rentsch attempted "to interfere with . . . the administration of justice by encouraging his family members to contact . . .the . . . victims and or witnesses" without using "force or threats." During phone calls that Rentsch had while incarcerated, he discussed not wanting Sevelis to disclose his conduct to the court, talked to his mother and friend about not wanting her to come to court, and explained how one could be prevented from coming to court. Additionally, he made at least implied threats against Sevelis, *McDonald*, 293 Mich App at 299-300, in agreeing with his friend that he wanted her to "disappear."[2] In addition, Rentsch obtained the names of the victims, gave the names to his mother, and discussed wanting to contact them. This conduct was sufficient to support the trial court's score. Consequently, the trial court did not err.

## B. *CROSBY* REMAND

Rentsch also argues that he is entitled to a *Crosby* remand because the trial court used judge-found facts to increase the floor of his guideline minimum sentencing range in violation of his Sixth Amendment rights. Rentsch did not preserve this issue for appeal. We review unpreserved challenges for plain error. *People v Lockridge*, 498 Mich 358, 364; 870 NW2d 502 (2015).

In *Lockridge*, 498 Mich at 364, our Supreme Court held that Michigan's sentencing guidelines are "constitutionally deficient" to "the extent [that they] *require* judicial fact-finding beyond the facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." (Emphasis in original.) Such a scheme "violates the Sixth Amendment." *Id*. at 373. Instead, "[a]ny fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v United States*, 570 US ___; 133 S Ct 2151, 2155; 186 L Ed 2d 314 (2013). If such a violation occurs, "the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error" using a procedure known as a *Crosby* remand. *Lockridge*, 498 Mich at 397.

In this case, the facts necessary to score OVs 4 and 19 were not found by a jury. The trial court assigned 10 points to OV 4. OV 4 governs "psychological injury to a victim." MCL 777.34(1). Ten points are assigned when there was "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). This issue was not submitted to or determined by the jury and Rentsch did not concede that the victim suffered such an injury.

---

[2] We note that this Court affirmed the same score for OV 19 involving Rentsch's other convictions on the basis of similar conduct. See *People v Rentsch*, unpublished opinion per curiam of the Court of Appeals, issued October 22, 2015 (Docket No. 321934).

The same is true of the evidence that the trial court relied on in scoring OV 19. When the 20 points assigned to OV 4 and OV 19 are subtracted from the total score, the applicable sentencing category goes from F-III to F-II. MCL 777.62. Accordingly, Rentsch's guideline minimum sentencing range, as a fourth habitual offender, goes from 135 to 450 months to 126 to 420 months. MCL 777.62. As such, he is entitled to a *Crosby* remand.

## IV. CONCLUSION

There were no errors warranting a new trial. However, because the trial court sentenced Rentsch using facts not found by a jury, we order a *Crosby* remand.

Affirmed in part, but remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause