*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERRY LESTER BUNDY,

        Defendant-Appellant.

UNPUBLISHED
February 1, 2022

No. 349072
Lenawee Circuit Court
LC No. 18-018845-FC

Before: K. F. KELLY, P.J., and STEPHENS and CAMERON, JJ.

STEPHENS, J. (*dissenting*).

I respectfully dissent from the majority and would reverse defendant's convictions and remand for a new trial. I agree with the majority's recitation of the relevant facts and many of its legal conclusions. I disagree, however, with the majority's conclusions related to the admissibility of an expert witness's testimony and several of defendant's claims for ineffective assistance of counsel, and believe those claims warrant a new trial.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL WITH RESPECT TO DETECTIVE HORAN'S TESTIMONY

I agree with the majority's rejection of defendant's argument that trial counsel was ineffective for failing to object to Michigan State Police Detective Sergeant Nathan Horan's references to defendant's participation in sex therapy, defendant's credibility, and comments that vouched for AB. I depart, however, from the majority opinion with respect to trial counsel's failure to object to Detective Horan's testimony suggesting defendant previously committed some type of sexual offense.

The majority asserts that as long as the other-acts evidence was not offered for propensity purposes, it does not violate MRE 404(b) and, therefore, defendant has failed to demonstrate that trial counsel's conduct fell below an objective standard of reasonableness. *People v Trakhtenberg*, 493 Mich 38, 51-52; 826 NW2d 136 (2012). But there can be no strategic reason for trial counsel's failure to object to this testimony, and there is a reasonable probability the testimony affected the outcome of the trial. Defendant's trial concerned a sexual offense, and multiple references were made to this previous conviction or accusation. Presenting testimony to the jury that defendant

was previously convicted or accused of a sexual offense was likely to draw serious attention to defendant's detriment. Thus, I would conclude that trial counsel's failure to object fell below an objective level of reasonableness. Typically, a person charged with a sexual offense would not want the jury to know about a past sexual assault conviction or accusation because of the danger that the jury would conclude that the person was guilty because he had committed, or was accused of committing, a like offense in the past. See MRE 404(b)(1). Although Detective Horan never explicitly stated that defendant had a prior conviction involving, or was accused of, a sexual offense, the jury could infer from Detective Horan's testimony that there was one. To allow these references to go without any objection and without any request for a limiting instruction falls below an objective level of reasonableness.

There was also a reasonable probability that trial counsel's deficient performance affected the outcome of the trial. *Trakhtenberg*, 493 Mich at 51. Although the prosecution's case was strong with AB's testimony and defendant's admissions that he inappropriately touched AB, it is probable that, without any instruction regarding how defendant's past could be utilized, the jury could have used defendant's past as a nudge to find AB credible. Accordingly, there is a reasonable probability that trial counsel's failure to object or request a limiting instruction affected the outcome of defendant's trial, necessitating a new trial.

## II. TESTIMONY OF DR. PARKIN-JOSEPH

### A. WITNESS LIST

With respect to the testimony of Dr. Carla Parkin-Joseph, the majority concludes that although allowing the prosecution to amend its witness list and add Dr. Parkin-Joseph as a witness just days before trial was plainly erroneous, reversal is not warranted because defendant cannot show the failure to object to the amended witness list affected the outcome of the trial. I agree that allowing the prosecution to amend its witness list to add Dr. Parkin-Joseph as a witness was plainly erroneous. I believe, however, that the error warrants reversal.

I am unable to say that the addition of Dr. Parkin-Joseph's testimony had no reasonable effect on the outcome of defendant's trial. Dr. Parkin-Joseph initially offered testimony that AB was sexually assaulted—regardless of a lack of signs of trauma—and acknowledged that she arrived at her opinion based on information from AB's mother, which, in turn, was based upon AB's report. Dr. Parkin-Joseph told the jury that 95% to 96% of the time, children did not exhibit any signs of trauma after being sexually abused. And critically, Dr. Parkin-Joseph admitted that, had she discounted the information from AB's mother, her diagnosis of sexual assault was "inconclusive." Cloaked in her expert imprimatur, however, Dr. Parkin-Joseph provided the jury with this inadmissible testimony. As our Supreme Court recognized in *People v Beckley*, 434 Mich 691, 722; 456 NW2d 391 (1990), "[t]o a jury recognizing the awesome dilemma of whom to believe, an expert will often represent the only seemingly objective source, offering it a much sought-after hook on which to hang its hat." Thus, I believe reversal is warranted.

### B. MRE 702

The majority also concludes that the admission of Dr. Parkin-Joseph's testimony regarding her diagnosis of sexual assault was not plainly erroneous. I respectfully disagree and believe the

plain error in admitting Dr. Parkin-Joseph's diagnosis of sexual assault affected the outcome of defendant's trial.

As the majority notes, Dr. Parkin-Joseph testified as an expert in the area of pediatric sexual assault medicine and child development. MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

When conducting her examination of AB, Dr. Parkin-Joseph found no bruising, no irritation, and no signs of trauma; Dr. Parkin-Joseph's internal examination of AB was "completely normal." Dr. Parkin-Joseph indicated that based on the examination alone, she could not exclude the possibility that a sexual assault had happened. Nevertheless, Dr. Parkin-Joseph, based solely on reports from AB's mother, testified that her medical diagnosis was that AB had been sexually abused. Dr. Parkin-Joseph (1) explicitly stated, "[D]iagnosis was physical—or, sorry, sexual abuse"; and (2) stated that "[w]ith [AB's] disclosure [to her mother], it would be consistent with the diagnosis of child sexual abuse."

Dr. Parkin-Joseph explained that her "diagnosis" was not based on any of her objective findings and instead was based solely on the reports from AB's mother. Essentially, Dr. Parkin-Joseph's testimony could be viewed as saying, "Because AB's mother said it happened, I too am saying it happened." This type of testimony is inadmissible. MRE 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Our Supreme Court has repeatedly held, however, that "an examining physician cannot give an opinion on whether a complainant had been sexually assaulted if the conclusion [is] nothing more than the doctor's opinion that the victim had told the truth." *People v Thorpe*, 504 Mich 230, 255; 934 NW2d 693 (2019) (quotation marks and citation omitted; alteration in original). An examining physician's testimony is objectionable if, absent evidence qualifying her as an expert in assessing credibility, "[her] opinion was based solely on what the victim had told [her]." *People v Smith*, 425 Mich 98, 109; 387 NW2d 814 (1986). This is because the physician's testimony lacks a "reliable foundation," and jurors are just as qualified to evaluate the complainant's credibility. *Id*. Even so, "an examining physician, if qualified by experience and training relative to treatment of sexual assault complainants, can opine with respect to whether a complainant had been sexually assaulted when the opinion is based on physical findings and the complainant's medical history." *Thorpe*, 504 Mich at 255.

As the majority notes, our Supreme Court in *Smith* held that an expert's testimony "that the complainant had been sexually assaulted" was inadmissible because the expert's testimony was not based on "any findings within the realm of his medical capabilities or expertise as an obstetrician/gynecologist, but, rather, on the emotional state of, and the history given by, the complainant." *Smith*, 425 Mich at 112. The Court explained that the doctor's "opinion was merely an inadmissible lay witness' opinion on the believability of the complainant's story." *Id*. at 113,

-3-

citing MRE 701. Here, Dr. Parkin-Joseph's opinion was based on even less—she relied only on the account of AB's mother regarding what AB had told her. Thus, Dr. Parkin-Joseph's diagnosis was based on the believability of AB's mother, who, in turn, had no personal knowledge of what happened to AB.

Dr. Parkin-Joseph's medical diagnosis of sexual abuse, and her testimony that AB's "disclosure" to her mother was "consistent with the diagnosis of child sexual abuse," "clearly falls within *Smith*'s holding that an examining physician cannot give an opinion on whether a complainant had been sexually assaulted if the 'conclusion [is] nothing more than the doctor's opinion that the victim had told the truth.' " *Thorpe*, 504 Mich at 262, quoting *Smith*, 425 Mich at 109. Dr. Parkin-Joseph's opinion is objectionable, and constitutes improper vouching, because it is based solely on AB's account of what happened, which was relayed to Dr. Parkin-Joseph by AB's mother. "Such testimony is not permissible because a 'jury [is] in just as good a position to evaluate the victim's testimony as' the doctor." *Thorpe*, 504 Mich at 262, quoting *Smith*, 425 Mich at 109.

The majority notes Dr. Parkin-Joseph's acknowledgment that "AB's allegation of sexual assault was not proven or disproven by the medical exam but, nevertheless, the child's disclosure could still be consistent with child sexual abuse," and believes that these were "isolated answers" that although "awkward and confusing, they were not inadmissible." But Dr. Parkin-Joseph's testimony is contrary to this Court's decision in *People v Del Cid*, 331 Mich App 532; 953 NW2d 440 (2020). There, this Court held that "an examining physician's testimony diagnosing a child-complainant with 'possible sexual abuse' is inadmissible without corroborating physical evidence . . . ." This Court explained:

> [W]hen there are no physical findings, a physician may not testify that the complainant suffered "possible pediatric sexual abuse" *or other phrases indicating a conclusion as to the likelihood that such abuse actually occurred*. At the same time, however, a medical expert may offer the opinion that a lack of physical findings does not affirmatively establish that no abuse occurred. [*Id*. at 548 n 7 (emphasis).]

See also *id*. at 547 ("*Harbison*, *Smith*, and the cases on which they relied establish a bright-line rule that an examining physician's opinion that a complainant was sexually abused is admissible only if supported by physical findings.").

Dr. Parkin-Joseph's testimony is contrary to *Del Cid* because there were no physical findings and Dr. Parkin-Joseph used language "indicating a conclusion as to the likelihood that such [sexual] abuse actually occurred." *Del Cid*, 331 Mich App at 548 n 7. Despite her concession that AB's examination was "normal" and she did not see any physical injuries on AB, Dr. Parkin-Joseph stated, in response to a question from the prosecutor about her diagnosis, that her *"[d]iagnosis was physical—or, sorry, sexual abuse*." And on cross-examination, Dr. Parkin-Joseph stated that AB "made a disclosure of sexual abuse and her exam was normal," which did not "prove or disprove the possibility of sexual abuse," but that with AB's "disclosure [to her mother], it would be *consistent with the diagnosis of child sexual abuse*." Thus, Dr. Parkin-Joseph stated not only that her diagnosis was sexual abuse and AB's disclosures to her mother were "consistent with sexual abuse," but also that there were no physical findings. And although *Del*

*Cid* notes that "a medical expert may offer the opinion that a lack of physical findings does not affirmatively establish that no abuse occurred," *id*. at 548 n 7, Dr. Parkin-Joseph's testimony went beyond this allowance when she explicitly stated her diagnosis was "sexual abuse" and that AB's disclosure was "consistent with the diagnosis of child sexual abuse." Thus, similar to *Del Cid*, in the absence of physical findings, it necessarily follows that Dr. Parkin-Joseph's opinion was based solely on her assessment of AB's disclosures to her mother and opined on the likelihood that sexual abuse occurred. See *id*. at 547, 548 n 7. Our Supreme Court "could not have been clearer that such testimony is inadmissible because it invades the jury's province to determine witness credibility." *Id*. at 547. Accordingly, I would hold that Dr. Parkin-Joseph's testimony regarding her medical diagnosis of sexual abuse was inadmissible.

Accordingly, the question is whether this error affected defendant's substantial rights, i.e., affected the outcome of the trial. Notably, under the plain-error standard of review in *Harbison*, the Supreme Court reversed the defendant's convictions and remanded for a new trial. *Harbison*, 504 Mich at 266. AB's credibility in this case was of paramount importance. It was undisputed that Dr. Parkin-Joseph never interviewed AB, and all of Dr. Parkin-Joseph's information of what allegedly happened came from AB's mother. Because there was no way to ascertain the credibility of AB's statements to her mother, Dr. Parkin-Joseph's testimony impermissibly vouched for AB's credibility. See *Beckley*, 434 Mich at 722; *Del Cid*, 331 Mich App at 547-548 n 6 (explaining that when an examining physician's opinion is based solely on a complainant's statements, "any diagnosis from an expert witness may be viewed by the jury as a 'stamp of approval.' ") (citation omitted). Thus, I conclude the error in admitting Dr. Parkin-Joseph's testimony affected the outcome of defendant's trial.

## C. HEARSAY

I agree with the majority's conclusion that because Dr. Parkin-Joseph formed her opinion that AB had been sexually assaulted by relying on AB's statements to her mother, those statements would *generally* be admissible under MRE 703 despite being hearsay. But because Dr. Parkin-Joseph's ultimate diagnosis of sexual assault is plainly inadmissible, I would conclude that AB's hearsay statements are also inadmissible because they no longer support an admissible opinion. Even so, I agree with the majority's conclusion that this error did not affect the outcome of the proceeding.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

The majority concludes that trial counsel was not ineffective for failing to object to Dr. Parkin-Joseph's late addition to the witness list and her diagnosis of AB having been sexually abused. I respectfully disagree with that conclusion.

I cannot conclude that trial counsel's failure to object to Dr. Parkin-Joseph's late addition to the witness list was strategic because she nonetheless testified that her physical examination of AB found everything was normal. The expert opinion testimony that AB was sexually abused was damning and foreclosed defendant's innocence. An objection to the witness list would have led to discovery of Dr. Parkin-Joseph's proffered opinion and the exclusion thereof. The majority asserts that had defendant objected, the prosecution would have been entitled to a good-cause hearing, at which the trial court would determine "whether the prosecutor had a good-faith reason

-5-

to untimely file the witness list, not to inquire into the specifics of the witness's testimony." But under MCL 767.40a(4), the prosecutor "may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties." That is, the prosecutor could add Dr. Parkin-Joseph as a witness with leave of court and for good cause shown or by stipulation. Thus, to demonstrate good cause, the prosecutor here would have necessarily had to explain the basis for the late addition of Dr. Parkin-Joseph to the witness list, and would have invariably led to discovery of Dr. Parkin-Joseph's proffered testimony. The failure to object to the witness list was outcome determinative because it is likely that the jury would have reached a different result with Dr. Parkin-Joseph otherwise only testifying to a normal examination with no evidence of injury or trauma.

The same can be said for trial counsel's failure to object to Dr. Parkin-Joseph's testimony regarding her "diagnosis" of sexual assault. As discussed earlier, that testimony was clearly inadmissible because it was based solely on the report from AB's mother and not based on any medical findings or analysis. There was no principled reason for trial counsel's failure to object to this testimony. In this context, I would conclude that trial counsel's failure to object had a reasonable probability of affecting the outcome of defendant's trial. The "prestige" of Dr. Parkin-Joseph being a medical doctor gave the jury an "objective source" of evidence upon "which to hang its hat." *Beckley*, 434 Mich at 722. The inadmissible testimony also bolstered the credibility of AB. See *Del Cid*, 331 Mich App at 547-548 n 6 (noting that diagnosis from an expert witness based solely on complainant's statements "may be viewed by the jury as a 'stamp of approval.' ") (citation omitted). Accordingly, this particular instance of trial counsel performing ineffectively had a reasonable probability of affecting the outcome of the trial.

## III. TIPTON'S TESTIMONY

I agree with the majority's conclusion that the prosecutor did not improperly elicit testimony of defendant's prior acts from defendant's girlfriend, Stephanie Tipton. I disagree, however, with the majority's conclusion that trial counsel was not ineffective for failing to object to Tipton's testimony.

Trial counsel's failure to object to Tipton's testimony, that defendant had "a prior" and "knows that he is at risk of being pointed at for something like this," fell below an objective level of reasonableness. *Trakhtenberg*, 493 Mich at 51. I cannot find a strategic reason for trial counsel's failure to object to Tipton's testimony. Typically, and as noted earlier, a person charged with a sexual offense would not want it disclosed to the jury that he had a previous sexual assault conviction because of the danger the jury would conclude he was guilty because he committed a similar offense in the past. See MRE 404(b)(1). When Tipton testified that defendant had a "prior," which was why she was always present with him when children were around, it further supported the logical inference that began with Detective Horan's impermissible comments that defendant was convicted of a prior sexual offense. Therefore, to allow these references to go without any objection and without any request for a limiting instruction falls below an objective level of reasonableness.

There is also a reasonable probability that trial counsel's deficient performance had a reasonable probability of affecting the outcome of the trial. *Trakhtenberg*, 493 Mich at 51. Although the prosecution's case was strong with AB's testimony and defendant's admissions that

he inappropriately touched AB, if the jury was on the fence about believing AB, the jury—without any instruction indicating how defendant's past could be utilized—could have used Tipton's testimony (like that of Detective Horan) about defendant's past as a nudge to find AB credible. Thus, there was a reasonable probability that trial counsel's failure to object and request a limiting instruction affected the outcome of the trial, requiring a new trial.

Accordingly, I would reverse defendant's convictions on the basis of his ineffective-assistance claims and remand for a new trial.[1]

/s/ Cynthia Diane Stephens

---

[1] Because I would conclude that reversal is necessary in light of the ineffective of assistance of counsel, I need not address whether the cumulative effect of any errors warrants reversal. Additionally, because I would remand for a new trial, defendant's challenges to the scoring of Offense Variables (OV) 3 and 4 of the sentencing guidelines need not be addressed. Even so, I would caution the trial court that in scoring OV 3, it not only must find by a preponderance of the evidence that the victim suffered an injury requiring medical attention, it must also find that the injury was *caused* by defendant's actions. MCL 777.33(1) and (3); see also *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011) (upholding 10 points for OV 3 because the evidence "established that the victim suffered an infection *as a consequence of the rape*.") (emphasis added).