*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HAROLD MARTELL BREWER II,

        Defendant-Appellant.

UNPUBLISHED
September 19, 2024

No. 365652
Kent Circuit Court
LC No. 22-000880-FC

Before: N. P. HOOD, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Defendant, Harold Martell Brewer II, appeals as of right his jury convictions of one count of voluntary manslaughter, MCL 750.321; two counts of assault with intent to murder (AWIM), MCL 750.83; one count of felon in possession of a firearm (felon-in-possession), MCL 750.224f; and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to serve 180 to 270 months for the voluntary manslaughter conviction, 240 to 360 months for each AWIM conviction, 60 to 90 months for the felon-in-possession conviction and 24 months for each felony-firearm conviction.

On appeal, defendant argues there was insufficient evidence presented at trial to prove beyond a reasonable doubt that he acted with the requisite intent for his AWIM convictions and the trial court erroneously imposed a sentence for his AWIM convictions on the basis of an Offense Variable (OV) 3 score of 10 points and an OV 6 score of 25 points. For the reasons stated in this opinion, we disagree.

# I. BACKGROUND

This case arises out of a shooting that took place in the early morning hours of June 20, 2021, in the parking lot of the Rapid Bus Station in Grand Rapids, Michigan that resulted in the death of Travon Seawood and the injury of others.[1]

The shooting arose out of an altercation between two groups of people. Travon Seawood, Chris Thomas, Jasleen Mendez, and Ebony Douglas of the first group arrived at the Rapid Bus Station parking lot in a two-door Camaro with tinted windows. The four individuals got out of the car and joined the remainder of the first group in the parking lot to socialize. Eventually, Mendez and Douglas returned to the Camaro to wait to leave. Mendez and Douglas sat in the backseat of the Camaro and left the driver's side door of the car open to continue talking with the first group. Because the door was open, the interior light inside the car was on.

Defendant, Grace Phillips, Rashad Short, and three others comprised the second group that arrived in a Mercedes and joined the party in the parking lot. After defendant's group arrived, Seawood walked back to the Camaro and told Mendez and Douglas that the second group "seemed cool at first" but that they were "being weird" and he was watching them. Phillips walked over to the Camaro and stood outside to speak with Douglas. While Phillips spoke with Douglas, an argument broke out between the two groups. The argument originated when a member of the first group, Caleb Hayes, showed off his new gun. An altercation broke out between Hayes and Short over the gun. Short took Hayes's gun and pointed it at Hayes and at other individuals. Seawood approached Short and demanded that Short return the gun. Instead of complying with this demand, Short pointed the gun at Seawood. Seawood drew his own gun and pointed it back at Short. After Short continued to refuse to return the firearm, Seawood shot Short and fled back to the Camaro.

Short fell to the ground. Defendant took the firearm from Short and shot at Seawood as he ran back to the Camaro. As Seawood ran, Mendez and Douglas yelled for Thomas to get in the car so that they could all drive away. Mendez testified that Thomas came to the car and yelled for them to open the passenger side door and let him in. Mendez and Douglas did not unlock the door. Instead, they ducked down to avoid gunshots. Douglas testified that at one point a bullet shattered the left backseat window and grazed her chest, leaving a burn mark.

Defendant followed Seawood and continued shooting at Seawood as he got in the car and started to drive away. Seawood drove the car over a curb and crashed it into the brick wall of a building across the street. Mendez testified that shots were still being fired at them when Seawood crashed the car. After the crash, Mendez and Douglas raised their heads in the backseat and yelled at an unresponsive Seawood to unlock the car doors. They also yelled for defendant to stop shooting. Defendant pursued the car across the street and shot at the crashed car while he was running toward it and shot multiple times hitting the passenger side while in very close proximity to the disabled vehicle. Seawood sustained five bullet wounds in total and was pronounced dead at the scene of the incident.

---

[1] The incident was recorded on nearby security cameras. These recordings were shown to the jury at trial.

Mendez and Douglas got out of the car and hid until police arrived at the scene. Mendez sustained an injury to her wrist and cuts on her hands and face from broken glass in the car. Douglas sustained an injury from the bullet that grazed her and injuries from the car crashing into the building.

Defendant fled the scene, drove Short to the hospital, and abandoned his vehicle after crashing it. Following the shooting, a felony warrant was issued for defendant's arrest charging him with one count of open murder for the killing of Seawood, two counts of AWIM for his conduct toward Mendez and Douglas, one count of felon-in-possession, and two counts of felony-firearm. Short was charged as defendant's codefendant with larceny and two counts of felonious assault. Short was convicted as charged. Defendant was convicted of each count, except for murder. Instead, he was convicted of voluntary manslaughter, a lesser included offense of murder. Defendant was sentenced, as stated earlier.

This appeal followed.

## I. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant argues that there was insufficient evidence presented at trial to prove beyond a reasonable doubt that he was aware of Mendez and Douglas's presence in the Camaro and that, therefore, he did not act with the requisite intent for an AWIM conviction. Because we conclude that the jury was given sufficient evidence that defendant knew Mendez and Douglas were in the car during the incident, we disagree.

## A. STANDARD OF REVIEW

We review de novo whether sufficient evidence supports a conviction. *People v Kenny*, 332 Mich App 394, 402; 956 NW2d 562 (2020). "In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. at 402-403. When reviewing a sufficiency claim on appeal, "we must defer to the fact-finder by drawing all reasonable inferences and resolving credibility conflicts in support of the jury verdict." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007). "The prosecution need not negate every reasonable theory of innocence; it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Kenny*, 332 Mich App at 403.

## B. ANALYSIS

Defendant only challenges the intent element of his AWIM convictions. To establish the crime of AWIM, the prosecution must prove "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005) (quotation marks and citation omitted). AWIM is a specific-intent crime, and therefore, the jury must find that defendant acted with an intent to kill. See *id*. at 147. "The element of intent may be inferred from circumstantial evidence." *Kenny*, 332 Mich App at 403. Moreover, "[b]ecause it can be difficult to prove a defendant's state of mind on issues such as intent, minimal circumstantial evidence suffices to establish a defendant's state of mind." *Id*.

In this case, the jury convicted defendant of two counts of AWIM for his conduct toward Mendez and Douglas. The record reflects that, during trial, the prosecution presented sufficient evidence that defendant knew Mendez and Douglas were in the car, and, therefore, acted with an intent to kill them when he shot at the car they sat in. See *Brown*, 267 Mich App at 147. Mendez and Douglas each testified that they were sitting in the backseat of Seawood's Camaro when defendant's group arrived in the parking lot. Douglas testified that the backseat windows were "deeply tinted;" however, she also testified that they sat with their heads above the backseat, the car door was open, and the interior light of the car was on. After the second group arrived, Phillips walked over to the Camaro and talked to Douglas through the open driver's side door. Seawood also came back to the car and talked to Mendez and Douglas about the second group. It can be reasonably inferred from this testimony that defendant became aware of Mendez and Douglas's presence in the backseat before the shooting started because he was present as several individuals stood outside the Camaro and talked to Mendez and Douglas through the open door while the two groups mingled. It was likewise reasonable for the jury to conclude defendant intended to kill when he discharged his weapon into the disabled and occupied car at point-blank range.

Even if defendant did not know Mendez and Douglas were in the vehicle before the shooting, evidence in the record supported that he became aware of their presence in the car once the shooting began. Douglas testified that when she looked to see if Seawood was coming back to the car, a bullet shattered the left backseat window, where she sat, and grazed her chest. Douglas also testified that, as Seawood ran and got back in the car, she and Mendez yelled for Thomas to get in the car, signaling their presence. Mendez testified that as Seawood drove away, shots continued to be fired in their direction, and that even when Seawood crashed the car, defendant continued to shoot at them.

Additionally, video evidence admitted at trial showed defendant running toward the crashed vehicle, discharging his weapon while running, and then firing multiple times once he was close to the vehicle.

From this evidence, it can be reasonably inferred that, even if defendant was not aware of Mendez and Douglas before he started shooting at the Camaro, he became aware of them after Mendez and Douglas yelled. Likewise, he had the opportunity to see them them after the window shattered. After both of these opportunities, defendant continued to shoot at the Camaro as it drove away and after it crashed. Viewing the evidence presented in the light most favorable to the prosecution, the prosecution presented sufficient evidence from which a rational jury could determine that defendant had an intent to kill Mendez and Douglas when he shot at the car knowing they were inside. See *Kenny*, 332 Mich App at 403.[2]

---

[2] Relatedly, defendant argues that, because the jury convicted him of voluntary manslaughter for the killing of Seawood, the specific intent necessary for AWIM could not be transferred from that offense to satisfy the intent to kill element. Because we conclude that sufficient evidence in the record supported that defendant directly intended to kill Mendez and Douglas, we decline to address this argument.

## II.  JURY INSTRUCTION

Defendant argues that the trial court plainly erred by providing the jury with instructions on transferred intent after providing instructions as to the other charges, rather than the transferred intent instruction immediately following the AWIM instructions.  This argument is waived on appeal.  Regardless, this argument is without merit.

Defense counsel raised an objection to the jury instruction for self-defense against persons acting in concert, but he did not object to the order of the jury instructions as read by the trial court. Rather, after the trial court read the instructions to the jury and asked the parties if they had any objections to the final instructions or the manner in which they were delivered, defense counsel responded, "None, Your Honor."  By expressly approving the jury instructions, defendant waived appellate review of his substantive claim of instructional error.  See *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011).  Defendant's waiver extinguished any error.  See *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000).[3]  Regardless, even if we were to address this issue, we find no merit in defendant's argument.  He identifies no authority that requires the trial court to deliver jury instructions in a specific order.

## III.  SENTENCING

Finally, defendant argues that the trial court improperly assessed 10 points for OV 3, MCL 777.33; and 25 points for OV 6, MCL 777.36.  We disagree.

## A.  STANDARD OF REVIEW

We review for clear error the trial court's factual determinations used for sentencing under the sentencing guidelines, and such facts must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).  "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made."  *People v Antwine*, 293 Mich App 192, 194; 809 NW2d 439 (2011) (quotation marks and citation omitted).  We review de novo "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute[.]"  *Hardy*, 494 Mich at 438.  When calculating the sentencing guidelines range, a trial court may consider all record evidence, including the contents of a Presentence Investigation Report (PSIR), plea admissions, and testimony presented at a preliminary examination.  *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012).  A PSIR "is presumed to be accurate and may be relied on by the trial court unless effectively challenged by the defendant."  *People v Callon*, 256 Mich App 312, 334; 662 NW2d 501 (2003).

---

[3] Defendant also failed to identify this issue in his brief's statement of questions presented.  MCR 7.212(C)(5).  Generally, we also do not consider issues that were not properly presented for appeal. *People v Anderson*, 284 Mich App 11, 16; 772 NW2d 792 (2009).

## B. OV 3

Defendant argues that the trial court improperly assessed OV 3 at 10 points rather than 5 or 0 points because the record did not demonstrate that Mendez's or Douglas's injuries required medical treatment and, even if they did, that the medical treatment did not actually occur. Defendant also argues that record evidence did not support that he caused the injuries. Because the record supported that Mendez and Douglas had injuries that required medical treatment and those injuries were caused, at least in part, by defendant's conduct, we disagree.

OV 3 concerns "physical injury to a victim." MCL 777.33(1). A defendant may be properly assessed 10 points under OV 3 if "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). For purposes of OV 3, bodily injury "requiring medical treatment" "refers to the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3).

A defendant's conduct "must constitute a factual cause" of the victim's injury for the purposes of assessing points under OV 3. *People v Laidler*, 491 Mich 339, 345; 817 NW2d 517 (2012). "In determining whether a defendant's conduct is a factual cause of the result, one must ask, 'but for' the defendant's conduct, would the result have occurred?" *Id*. (quotation marks and citation omitted). However, the defendant's conduct is not required to be the exclusive cause of the injury. *Id*. at 346. Furthermore, bodily injury "encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011).

Both Mendez and Douglas suffered injuries that required medical treatment. Mendez testified that she hurt her wrist and had minor injuries on her face and hands that she believed she sustained from the glass of the car's broken window. Douglas testified that, when the shooting began, a bullet shattered the left backseat window of the car and grazed her chest. She testified that she "felt a little sting" and looked down to see her "skin was really on fire." She otherwise testified that she sustained injuries from the car crash, but did not describe those injuries. Defendant's PSIR reported that the Grand Rapids Police Department indicated that Mendez and Douglas were transported to the hospital for their injuries after officers arrived at the scene. Each of their injuries was an "unwanted physically damaging consequence" from the incident. *Id*. Whether they actually obtained medical treatment is irrelevant to the assessment of OV 3. See MCL 777.33(3).

Moreover, a preponderance of the evidence supported that the injuries arising out of the car crash were caused, at least in part, by defendant. See *Laidler*, 491 Mich at 345-346. Defendant was convicted of voluntary manslaughter for the death of Seawood. Seawood got into the car and drove off to flee from defendant shooting at him. He crashed the car containing both Mendez and Douglas into a brick wall across the street and then succumbed to his gunshot injuries. The gunshot Douglas sustained and the injuries caused from broken glass were a result of defendant's actions. Accordingly, the trial court properly assessed OV 3. Defendant is not entitled to resentencing.

-6-

## C. OV 6

Defendant also argues that the trial court improperly assessed OV 6 at 25 points rather than 10 points because the jury convicted defendant of his sentencing offense, AWIM, by transferring his intent to kill Seawood to his assault on Mendez and Douglas. Defendant contends that he was in an extreme emotional state caused by an adequate provocation during the assault. Because defendant was convicted of AWIM and record evidence supported his convictions, we disagree.

OV 6 of the sentencing guidelines is scored for "homicide, attempted homicide, conspiracy or solicitation to commit a homicide, or assault with intent to commit murder." MCL 777.22(1). The trial court must assign 25 points to OV 6 if the defendant "had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). Alternatively, the trial court must assign 10 points to OV 6 if the defendant "had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life." MCL 777.36(1)(c). The trial court must score OV 6 "consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a).

During defendant's sentencing hearing, defendant objected to the assessment of 25 points for OV 6 and argued that it should be assessed at 10 points instead. Defendant argued that the fact that he was acquitted of murder, and instead convicted of the lesser included offense of voluntary manslaughter, demonstrated that "the jurors were cognizant of the fact that there was some excitement going on here." The trial court overruled defendant's objection, stating that "[t]he jury's verdict in this case clearly establishes that [defendant] committed manslaughter. It was not premeditated . . . . But, it certainly created a very high risk of death. And, in fact, resulted in a death in this case."

Although the trial court appeared to assess 25 points for OV 6 on the basis of defendant's manslaughter conviction, the sentencing offense was AWIM. *People v McGraw*, 484 Mich 120, 124; 771 NW2d 655 (2009) ("The sentencing offense determines which offense variables are to be scored in the first place, and then the appropriate offense variables are generally to be scored on the basis of the sentencing offense."). Nonetheless, "[t]his Court will not reverse when the trial court reaches the right result for the wrong reason." *People v Moorman*, 331 Mich App 481, 490; 952 NW2d 597 (2020). Defendant was convicted of two counts of AWIM, which reflects that defendant had the intent to kill Mendez and Douglas. *Brown*, 267 Mich App at 147. As already noted, sufficient evidence supported defendant's AWIM convictions on the basis that he had an intent to kill Mendez and Douglas. Because the trial court's assessment of 25 points is consistent with the jury's verdict, see MCL 777.36(2)(a), and is supported by record evidence, the trial court did not err when scoring OV 6. Defendant is not entitled to resentencing.

Affirmed.

/s/ Noah P. Hood
/s/ Colleen A. O'Brien
/s/ James Robert Redford

-7-